[West Pratt Coal Co. v. Dorman, et al.]


# West Pratt Coal Co. *v.* Dorman, *et al.*

*Injury to Realty by Mining Operations.*

(Decided May 20, 1909. 49 South. 849.)

1. *Mines and Minerals; Operation; Injury to Soil; Support of Surface.*—The owner of the surface is entitled to have it perpetually sustained in its natural state by adequate supports, the right to mine being servient to the rights of the surface owner, and if the surface owner sustained damages from a failure of such support, they are recoverable against the mine owner without reference to any negligence of the owner in working the mine.

2. *Limitation of Action; Accrual of Right; Injury to Soil by Mining.*—Until some actual damage has been done to the surface soil by the mining operations underneath, the statute of limitations will not begin to run against the owner of the surface.

APPEAL from Walker Circuit Court.

Heard before Hon. JAMES J. RAY.

Action by M. T. Dorman and others against the West Pratt Coal Company for injury to the surface by mining underneath. Judgment for plaintiff and defendant appeals. Affirmed.

BANKHEAD & BANKHEAD, for appellant. The court erred in refusing charges 2 and 3 requested by appellant.—*Newman v. Pardee,* 55 L. R. A. 410. As to the questions of limitations presented attention is called to the distinction drawn between this case and cases of other character by Judge Brickell in *Savanah, etc., R. R. Co. v. Buford,* 106 Ala. 303, and cases there cited; see, also *Polly v. McCall,* 37 Ala. 20; 25 Cyc. 1135; 27 Cyc. 799.

L. D. GRAY, for appellee. There is no error in the record.—*Huntsville v. Ewing,* 116 Ala. 576; *S. A. & M. Ry. Co. v. Buford,* 106 Ala. 303.

SAYRE, J.—Appellees recovered judgment against the appellant in an action on the case for damages alleged to have been caused by the appellant (defendant) in mining coal beneath the surface of appellees' (plaintiffs) lot at Horse Creek in such manner that the subjacent support of the same was impaired and the upper soil caused to crack open and settle down. There was evidence tending to show that coal had been mined under the lot by a former owner of the underlying minerals several years before suit brought, and that, both before and after the point of time one year before suit brought, defendant had mined coal there. The settling down of plaintiffs' lot occurred less than one year before the commencement of the suit. The single question raised by the record and argument of counsel is whether the trial court erred in refusing to defendant charges which put forward the proposition that if the coal, the removal of which left the upper soil without proper support, and so caused its subsidence, was removed more than one year before the commencement of the suit, the plaintiffs could not recover.

The plaintiffs owned the surface; the defendant, the underlying minerals. The right to mine is servient to the right of the owner of the surface to have it perpetually sustained in its natural state—no question as to the right to have buildings sustained is involved—by adequate supports.—*Williams v. Gibson,* 84 Ala. 228, 4 South. 350, 5 Am. St. Rep. 368. The owner of the upper soil is entitled as of common right to support from subjacent strata, independent of the negligence of the owner of the minerals in working his mine.—*Humphries v. Brogden,* 12 Q. B. 739. So that the charge of negligence to be found in some of the counts neither added to nor detracted from the cause of action stated. Under the evidence it was open, perhaps, to the jury to find that

the mining which caused the cracking and settling down of plaintiffs' lot had been done by the defendant more than one year before suit brought. If such was the case, when did the statute of limitations begin to run? In *Rountree v. Brantley*, 34 Ala. 544, 73 Am. Dec. 470, *Polly v. McCall*, 37 Ala. 20, and *Savannah, etc., v. Buford*, 106 Ala. 303, 17 South. 395, after recognizing the principle of class of cases in which parties are allowed to maintain suit before any actual injury is done, for the reason that wherever there is a wrong there must be a remedy, and plaintiff must at least be entitled to nominal damages, and that otherwise the adverse user might ripen into a title by lapse of time before there was any actual damage, it was determined that an interference with the natural flow of water by a structure on the land of an adjoining owner, causing an injurious reflux of water, confers a right of action whenever the injury actually occurs; and in the last-named case it was said: "The roadbed and embankment are permanent and continuous structures; and if their erection had given the plaintiff a cause of action, and then all the damage which could have resulted had resulted, the statute of limitations would have commenced to run from the time of their completion. But if the thing complained of is not necessarily injurious or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it furnishes a cause of action accruing when the injury occurs, and then the statute of limitations commences to run."

These cases went upon the theory that the injuries complained of had causal origin in the maintenance of a nuisance, and it was considered by them that the injurious consequences resulting from the nuisance, rather than the act which produced the nuisance, was the cause of action. "Nuisance, nocumentum, or annoy-

ance, signifies anything that worketh hurt, inconvenience, or damage, * * *and private nuisances, which are the subject of our present consideration, may be defined: Anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another."— 3 Black. Com. 216. "The remedies by suit are: (1) By action on the case for damages, in which the party injured shall only recover satisfaction for the injury sustained, but cannot thereby remove the nuisance. Indeed, every continuance of a nuisance is held to be a fresh one."—Id. 220. "Anything constructed on a person's premises, which of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, is a nuisance."—*Grady v. Wolsncr,* 46 Ala. 381, 7 Am. Rep. 593; *Hundley v. Harrison,* 123 Ala. 292, 26 South. 294; *Richards v. Daughtery,* 133 Ala. 569, 31 South. 934. The idea of nuisance receives a somewhat extended application in Sutherland on Damages where it is said: "An actionable nuisance may be anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights. It may be created by an affirmative act causing annoyance and damage, or by neglect of some duty of prevention."—Section 1035.

The facts of the case under consideration constitute the plaintiffs' cause of offense a nuisance, and meet the conditions laid down as for the maintenance of an action on the case whenever the injury may actually occur. The structure was in its nature permanent and continuous, but its damnfying effects did not occur until after the lapse of time; and it is a matter of practical importance, though perhaps not touching the principle involved, that they may not be known until they do occur. Perhaps a more accurate use of language, without varying legal effect, would describe the first cause of plaintiffs' injury as the destruction of a struct-

ure upon which the plaintiffs had a legal right to de-
pend for the support of their land. It may be likened
to a hole dug near to one's land, which, after a while
and under the influence of the seasons, permits his land
to slough away from time to time. The damages com-
plained of flowed as consequences from a nuisance.
In the leading case of *Bonomi v. Backhouse,* 9 H. L.
Cas. 503, plaintiffs' lot and the house upon it had been
caused to settle by excavation of the underlying strata.
In the House of Lords, Lord Chancellor Westbury said:
"I think it is abundantly clear, upon both principle and
authority, that when the enjoyment of the house is in-
terfered with by the actual occurrence of the mischief,
the cause of action then arises, and that the action may
be maintained." Upon the same occasion Lord Cran-
worth observed: "I think the error in the view which
has sometimes been taken upon this subject is this:
It has been supposed that the right of the party whose
land is interfered with is a right to what is called 'the
pillars,' or the support. In truth, his right is a right
to the ordinary enjoyment of his land, and till that or-
dinary enjoyment is interfered with he has nothing of
which to complain. That seems to be the principle
upon which this case ought to be disposed of."—16 Eng.
Rul. Cas. 215. See, also, *Church of Holy Communion
v. Paterson, etc.,* 66 N. J. Law, 218, 49 Atl. 1030, 55
L. R. A. 81. These cases, and the analogy afforded by
our own cases, supra, seem to leave no room for doubt
that the statute of limitation will not begin to run in
an action of the sort here involved until some actual
mischief has been done to the upper soil.

Appellant urges upon our consideration the case of
*Noonan v. Pardee,* 200 Pa. 474, 50 Atl. 255, 55 L. R. A.
410, 86 Am. St. Rep. 722. For precedent that case con-
tents itself with a reference to an earlier decision of
*Bonomi v. Backhouse, supra,* which was overruled on

appeal in those decisions from which we have quoted, as it had been in the Exchequer Chamber. For conclusion it holds that "the miner is not forever answerable for even his own default"—an argument ab inconvenienti, which seems too easily to out weigh the inconveniences which must result to the owners of the upper soil from a contrary ruling. Without attaching too much importance to the argument from inconvenience as making for one conclusion or another, we quote the remarks of Mr. Justice Willes, when deciding *Bonomi v. Backhouse* in Exchequer Chamber: "The contention on the part of the defendant is that the action must be brought within six years after the excavation is made, and that it is immaterial whether any actual damage has occurred or not. The jury, according to this view, would have, therefore, to decide upon the speculative question whether any damage was likely to arise; and it might well be that in many cases they would, upon the evidence of mineral surveyors and engineers, find that no damage was likely to accrue, when the most serious injury afterwards might in fact accrue, and in others find and give large sums of money for apprehended damage, which in point of fact never might arise. This is certainly not a state of law to be desir-ed."—E. B. & E. 655.

In line with the authorities noted above, and the reasons upon which they proceed, we hold that a cause of action accrues to the owner of the upper soil when the failure of support by the underlying strata, through causes put into operation by mining them, interferes with the utility and enjoyment of the superincumbent soil.

Affirmed.

Dowdell, C. J., and Anderson and McClellan, JJ., concur.