429 So.2d 278 (1983)
Frank G. STEPHENS and Karla S. Stephens
v.
Marion J. CREEL, Individually, and Creel Construction & Realty Co., Inc., a corporation.
81-1053.
Supreme Court of Alabama.
March 11, 1983.
*279 C.R. Lewis of Lewis & Brackin, Dothan, for appellants.
Jere C. Segrest of Hardwick, Hause & Segrest, Dothan, for appellees.
TORBERT, Chief Justice.
This is an appeal by Frank G. and Karla S. Stephens from the trial court's granting of the defendants' ARCP 12(b)(6) motion on the grounds that it affirmatively appeared from the face of the complaint that the six-year statute of limitations had run on the Stephenses' claim. The ex contractu claim is based upon allegations of breach of warranty for defective workmanship in the construction of a home. The lower court entered the following order:
"Defendants' Motion to Dismiss is granted in that under the complaint of the Plaintiff it is affirmatively shown that more than 6 years have run between the time of the making of the contract and the filing of suit, and in no event would the time limitation in which to file suit extend beyond 6 years. Sims v. Lewis, 374 So.2d 298; McGruder v. B & L Construction Company, Inc. [293 Ala. 354], 303 So.2d 103."
The record shows that in October of 1972 the parties entered into a contract by which Creel[1] agreed to construct a home for Mr. and Mrs. Stephens according to the plans and specifications provided. The allegations of the complaint reveal that the original plans and specifications, providing for concrete slab flooring, were changed by agreement of the parties to provide for wood floors to be constructed at an adequate height above the ground. Creel completed construction of the home in November of 1973. The Stephenses claim that Creel breached the agreement by failing to construct the house in a workmanlike manner, in that Creel "failed to provide for adequate ventilation and flow of air between the ground and wood joists, timbers, sills and wood floors and failed to cover the ground underneath said wood floors with adequate polyethylene or other substance to prevent moisture from the ground causing the joists, timbers, sills and wood floors to rot," and further claim that "As a proximate result of defendants' said breach of said agreement, the joists, timbers, sills and wood floors and other parts of said home were caused to rot, deteriorate and were otherwise damaged."
The Stephenses, denying any prior notice or knowledge of facts by which they could have discovered the problem earlier, allege that "about November, 1979, when they noticed that the surface of the foyer tile was becoming irregular, plaintiff, Frank G. Stephens, looked under the house and, for the first time, saw the rotting wood and damaged timbers and floors." The complaint in this action was not filed until April of 1982.
Appellees state the issue presented:
"Whether the 6 year statute of limitations (6-2-26, Code 1975) begins to run on an ex contractu action from the date of the breach of the contract or from the date of discovery of damages?"
By so stating the issue, counsel for Creel focuses the Court's attention on the respective positions of the parties. Both parties concede that the statute of limitations does not commence to run with the making of the contract as the trial court said it did. Creel contends, however, that the statute *280 runs from the date of the alleged breach; and this occurred, says Creel, on the date of the completion of the contract.
The Stephenses, on the other hand, assert that their claim should not be barred before they even knew of the damage; that is, they contend for the adoption of a "discovery" doctrine with respect to the beginning of the running of the six-year statute of limitations.
We agree that the trial court erred in holding that plaintiffs' cause of action accrued when the contract was made. The statute of limitations does not begin to run upon the entering into of a contract, but when the contract is breached and a cause of action accrues. Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975).
We hold that in a contract action based upon a warranty to construct a house in a workmanlike manner, the cause of action accrues and the statute of limitations begins to run on the date the defendant completes performance. By its very nature it is the failure to construct the house in a workmanlike manner that constitutes the breach. Therefore, the plaintiff's cause of action is barred by the six-year statute of limitations. Code 1975, § 6-2-34.
The appellants' arguments are premised on the erroneous assumption that at the date of completion there were no damages, and that the damage only came about as the floor began to rot. We disagree.
At the date of completion, there was allegedly a failure to construct the house in a workmanlike manner. Specifically, plaintiffs say, the house was to have been built higher off the ground, or greater ventilation needed to be provided beneath the house, or plastic layers should have been placed over the ground. At that time the plaintiffs would have sustained damages measured by the difference between the fair market value of the property as it was constructed, and the fair market value of the property as it should have been constructed. At that point, the plaintiffs could have recovered an amount necessary to put the structure in the condition it would have been in if Creel had properly completed performance of the construction contract.
Counsel for both parties have argued at length case law arising from causes of action sounding in tort rather than contract. See, Payne v. Alabama Cemetery Ass'n, Inc., 413 So.2d 1067 (Ala.1982) (tort action for trespass and negligent or wanton destruction of bodily remains); Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979) (tort action for personal injury, based on negligence, strict liability, extended manufacturers liability); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925) (tort action for negligence in permitting a basement to become filled with water); West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909) (tort action for trespass resulting in the collapse of plaintiff's land); Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973) (tort action for negligence resulting in damage to a building). In the tort context the rules governing the accrual of a cause of action differ from those applied in a contract case. That is, in the tort context a showing of injury or damage is an integral part of the cause of action. In the contract context, on the other hand, even if the plaintiff could not show any actual damage, we have repeatedly allowed a recovery of at least nominal damages where the plaintiff has shown that defendant has breached the terms of the contract. See, Stephenson v. Jebeles & Colias Confectionery Co., 10 Ala. App. 431, 65 So. 314 (1914); World's Exposition Shows, Inc., v. B.P.O. Elks, 237 Ala. 329, 186 So. 721 (1939).
The secondary authorities are in accord with the distinction between contract and tort actions that we have suggested above. In a contract action:
"As a general rule, the statute of limitations begins to run in civil actions on contracts from the time the right of action accrues. This is usually the time of the breach of the agreement rather than the time that actual damages are sustained as a consequence of the breach.
"...

*281 "According to many courts, where the gist of an action is fraud concealed from plaintiff, or where there is fraudulent concealment of a cause of action, the statute of limitations does not commence to run until discovery of the wrong or of facts placing one on inquiry. But the general rule in actions at law is that the mere fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not prevent the running of the statute or postpone the commencement of the period of limitation until he discovers the facts or learns of his rights thereunder...." (Emphasis added.)
51 Am.Jur.2d Limitation of Actions §§ 126, 146 (1970). In contrast, in a tort action:
"The general rule that the statute of limitations begins to run from the time that the cause of action accrues is fully applicable to tort actions, and, as regards to running of the statute of limitations applicable to torts, a cause of action accrues only when the force wrongfully put in motion produces injury, the invasion of personal or property rights occurring at that time." (Emphasis added.)
51 Am.Jur.2d Limitation of Actions § 135 (1970).
We find several Alabama cases which support this result. Sims v. Lewis, 374 So.2d 298 (Ala.1979), dealt in part with the question of when a defense of laches would be successful in a cause of action based upon an implied warranty. The defective condition in that case was a faulty septic system which malfunctioned within six years after completion. The opinion appears to rely on the date of completion of the house as the date on which plaintiff's cause of action for breach of an implied warranty accrued. This Court recognized our rule that, "In no event, however, would the time limitation within which to file suit for implied warranty extend beyond the period allowed for filing suit on an express warranty (six years)." 374 So.2d at 305.
Likewise, in Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala.1979), the plaintiff sought to avoid the bar of the statute of limitations in a contract action. The defendant had agreed to maintain an access road for the plaintiff, but had failed to do so for a period of ten years before the action was commenced. In that case the plaintiff attempted to convince this Court that the jury should be allowed to determine what would be a "reasonable" time within which performance should commence where a contract does not specify the time of performance. The plaintiffs sought this ruling, so that the statute of limitations of six years would run from the "reasonable" time determined by the jury. This court rejected this approach, for reasons of public policy:
"Statutes of limitations are founded in part at least on general experience that claims which are valid usually are not allowed to remain neglected, and that the lapse of years without any attempt to enforce a demand creates a presumption against its original validity or that it has ceased to exist. The basic principle most generally relied on by the authorities is that statutes of limitations are statutes of repose, the object of which is to prevent fraudulent and stale claims from springing up after long periods of time and surprising the parties or their representatives when evidence has become lost or the facts have become obscure from the lapse of time. 53 C.J.S. Limitations of Actions § 1, at 902-903, and authorities cited therein."
376 So.2d at 1086. The same rationale applies to the case before us. This Court also stated in Seybold:
"`Breach' consists of the failure without legal excuse to perform any promise forming the whole or part of the contract. Where the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do." (Citations omitted.) (Emphasis added.) 376 So.2d at 1085. In the case before us Creel allegedly failed to construct the house in the workmanlike manner the contract called for. Therefore, under Seybold, the breach was actionable at that time.
*282 The approach taken here finds support in the case law from other jurisdictions. In Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 62 A.2d 771 (1948), the plaintiff's cause of action was for breach of contract to construct a house in a skillful and workmanlike manner. The plaintiff complained that the insulation put in the walls in 1935 was improperly installed, resulting in an injury that did not become apparent until 1945. In that case the court stated:
"The contention of the plaintiff is that the right of action did not accrue until the damage became manifest in 1945. There is a distinction between the occurrence in 1935 of the wrongful act which gave rise to the damage and the becoming aware of the actual damage by reason of its discovery in 1945. It is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action.
"...
"... [T]he application of the rule may result in occasional hardship. `The statute of limitations is a statute of repose. At times, it may bar the assertion of a just claim. Then its application causes hardship. The Legislature has found that such occasional hardship is outweighed by the advantage of outlawing stale claims.' Schmidt v. Merchants Dispatch Transportation Co., supra, 270 N.Y. [287] at page 302, 200 N.E. [824] at page 827.
"In the present case, the faulty work which is alleged to have broken the contract resulted in legal damage as soon as it was done. The injury was inflicted at the time the work was done and not by subsequent neglect on the part of the defendant. There was no fraudulent concealment.
"...
"... In an action for breach of contract such as is alleged in the present case, the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." 62 A.2d at 773. This same approach is taken in other jurisdictions:
"An action resting on breach of contract generally accrues at the time the contract is broken, although substantial damages from the breach are not sustained until afterward. The gist of the action is the breach, and not the consequential damages which may subsequently accrue. Such damages are not the result of a new or continuous breach, but relate back to the original breach which gave the right of action and without which they could not exist. Nominal damages at least can be recovered immediately upon the happening of the breach, and the Statute of Limitations then begins to run; its operation is not delayed until substantial or consequential damages accrue."
Livingston v. Sims, 197 S.C. 458, 462, 15 S.E.2d 770, 772 (1941). See also, Howarth v. First National Bank of Anchorage, Alaska, 540 P.2d 486, aff'd, 551 P.2d 934 (Alaska 1975).
This same result would be reached in breach of warranty cases arising under the Alabama Uniform Commercial Code, § 7-2-725. The four-year statute runs from the date when tender of delivery is made unless explicitly extended by the parties or unless personal injury results from the defect. See, Simmons v. Clemco Industries, 368 So.2d 509 (Ala.1979).
Finally, we must emphasize that this result is controlled by the nature of the warranty itself. We must distinguish warranties of current condition (as in the case before us) in which a breach occurs at the outset, from warranties concerning future conditions, in which case a breach might occur at a later date. This distinction was well-made in Vilord v. Jenkins, 226 So.2d 245 (Fla.App.1969), an action based upon a contract by a physician to perform a sterilization procedure which would render the wife permanently unable to become pregnant:
"Ordinarily, a statute of limitation begins to run on a contract of warranty, as in *283 other contracts, when the contract is breached. But that critical point of time depends upon whether the warranty relates to an existing fact or event, or whether it relates to a future fact or event. In the former case it is breached when made or it is never breached at all. But in the latter case no breach occurs, and consequently no cause of action accrues, and the statute of limitations does not begin to run, until the happening of the future event."
226 So.2d at 247. The warranty to construct in a workmanlike manner is a warranty of current condition, and, therefore, the performance of the defendant must be evaluated as of the time when the structure was completed.
We are compelled to hold that the cause of action accrued and the statute of limitations began to run on the date Creel completed performance. Thus the contract claim for breach of warranty was barred by the six-year statute.
AFFIRMED.
MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER, JONES and ADAMS, JJ., dissent.
JONES, Justice (dissenting).
I respectfully dissent.
The chronological sequence of events, as taken from the complaint, are:
October, 1972Oral Agreement between Homeowners and Builders.
November, 1972Builders complete construction contract.
November, 1979Homeowners discover defects in the home.
April 14, 1982Complaint filed.
Although the parties reach different conclusions, they both agree upon the basic premise: that the period of limitations begins to run from the date of the accrual of the cause of action.
Chief Justice Torbert, speaking for the Court in Payne v. Alabama Cemetery Association, Inc., 413 So.2d 1067 (Ala.1982), analyzed the Alabama case law relating to the accrual of a cause of action:
"The time when the statute of limitations begins to run was analyzed thoroughly by this Court in Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979). In that case it was stated that the statute of limitations begins to run in favor of the party liable from the time the cause of action accrues, and the cause of action accrues as soon as the party in whose favor it arises is entitled to maintain an action thereon. 368 So.2d at 518. The plaintiff's ignorance of a tort or injury does not postpone the running of the statute of limitations until that tort is discovered. Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).
"The statute, however, will not begin to run until some injury occurs which gives rise to a maintainable cause of action. Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925); West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909). As pointed out in Garrett v. Raytheon Co., the basic principle set forth by Corona Coal and West Pratt Coal on one hand, and Garrett v. Raytheon Co. on the other, are the same. In actions such as the case at bar, the act complained of does not itself inflict a legal injury at the time it is done, but plaintiff's injury only follows as a result and a subsequent development of the defendant's act. `In such cases, the cause of action "accrues," and the statute of limitation begins to run, "when and only when, the damages are sustained."' Garrett v. Raytheon Co., 368 So.2d at 519. See, also, Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).
"Here, it was discovered in 1979 that the grave supposedly containing Emma Lee and Alzada Payne was sinking. It was then discovered that the bodily remains of Emma Lee were missing. At that particular point the plaintiff's injuries accrued, as she had nothing of which to complain until the discovery of the missing body and casket. This stands in *284 contrast to an injury of the type found in Garrett v. Raytheon Co., where the progressive nature of the injury has not made itself manifest at the time of the last exposure. In cases of that nature, the statute of limitations begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979); Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973). We therefore hold that the statute of limitations did not begin to run until May 13, 1979, when it was discovered that the bodily remains and casket of Emma Lee were missing and the injury to the plaintiff actually occurred."
Likewise, in Ramey v. Guyton, 394 So.2d 2 (Ala.1980), interpreting the Medical Malpractice Act (§ 6-5-482), and finding that the cause of action accrued on the day Plaintiff suffered her stroke, the Court stated:
"We find it patently unreasonable to attempt to fix the accrual date at the time the prescription was written, which act produced no concurrent injury to the Plaintiff."
The applicable rule is relatively simple to declare: In the absence of a statute,[1] the cause of action accrues, thus commencing the running of the six-year period of limitations, when the alleged breach becomes actionable; that is, when the action is maintainable, the cause of action accrues.
The application of the rule to the peculiar facts of this case is much more difficult. Indeed, these facts do not lend themselves to the solution contended for by either of the parties. Builders' "completion of the contract" date is unacceptable, because, clearly, on that day Homeowners had suffered no actionable breach. This is the precise point spoken to in Bonomi v. Backhouse, 9 H.L.Cas. 503, quoted in West Pratt Coal Co. v. Dorman, 161 Ala. 389, 394, 49 So. 849 (1909):
"`The contention on the part of the defendant is that the action must be brought within six years after the excavation is made, and that it is immaterial whether any actual damage has occurred or not. The jury, according to this view, would have, therefore, to decide upon the speculative question whether any damage was likely to arise; and it might well be that in many cases they would, upon the evidence of mineral surveyors and engineers, find that no damage was likely to accrue, when the most serious injury afterwards might in fact accrue, and in others find and give large sums of money for apprehended damage, which in point of fact never might arise. This is certainly not a state of law to be desired.'"
While the speculative nature of prospective damages, if any, to Homeowners' new residence left Homeowners without a cause of action, for damages based on breach of warranty on the date of its completion (there being no damages at that time), Homeowners' discovery of damages seven years later comes at a time far removed from the initial loss, giving rise to a cause of action for damages. Put another way, our case law does not support either the completion-of-the-contract date or the discovery-of-the-damages date as the time for the commencement of the running of the statute of limitations. Under these facts, the former comes before the accrual of the ex contractu cause of action and the latter after its accrual.
To commence the statute's running as of the completion date of the contract flies in the face of the principles laid down in West Pratt Coal Co. and Ramey v. Guyton, supra. The newly-purchased residence manifested no damage in 1972 which would support an actionable breach of the construction contract. By the same analysis, however, to commence its running from the Homeowners' *285 first becoming aware of the extreme decay damages in November, 1979, would be violative of Garrett's rejection of the discovery rule.[2] Indeed, Homeowners do not seriously contend, apart from the invocation of the discovery rule, that the alleged damage did not constitute an actionable breach at some point in time before November 1979.
Homeowners' discovery of the advanced structural damage, as shown by the pleadings in the instant case, is not to be confused with plaintiff's discovery of the "sinking" grave in Payne. The cause of action in Payne could not have accrued until plaintiff became aware of the defendants' conduct which allegedly resulted in plaintiff's personal injury. Contrary to the facts in the instant case, where the legal damage and the discovery of that damage are separated by length of time, the legal injury and the discovery of defendant's alleged wrongful conduct concurred in Payne, thus accruing the cause of action upon the incident of plaintiff's injury.
When, then, did Homeowners' cause of action accrue? Justice Maddox, speaking for the Court in Sims v. Lewis, 374 So.2d 298 (Ala.1979), addressed this question:
"Alabama has yet to have any case law specifying how long this warranty is to remain in effect after the sale of a new house. The better view is that, in the absence of a statute, the limit of liability is governed by reasonableness. Thus, whether the defect was discovered within a `reasonable' period would be a jury question. In no event, however, would the time limitation within which to file suit for implied warranty extend beyond the period allowed for filing suit on an express warranty (six years). Section 6-2-34, Code 1975."
The rule of "reasonableness" by which the builders' limit of liability is governed" has two separate, but related, dimensions.
First, the scope or coverage of the warranty is subject to reasonable limitations. Implied warranties of workmanship and fitness are not intended as endless guarantees against all structural defects. The second dimension relates more specifically to the accrual of the cause of action for breach of implied warranty. We can appreciate this aspect of the reasonableness rule by first understanding what it does not mean. It does not mean, for example, that the jury is left to determine the time frame within which the homeowner must bring the suit after the cause of action accrues. That period is prescribed by law. § 6-2-34.
Instead, the jury, using the test of reasonableness, determines, under the evidence, when the actionable breach occurred. That is, the jury, having first found that the claimed breach comes within the scope of the warranty, as contemplated by the parties, must then determine, from the reasonable inferences of the evidence, when the damage, if any, occurred. If such damage results proximately from the builder's breach of contract, express or implied, and, if the damage is of such nature and extent as to support an actionable breach of warranty, a cause of action accrues and the six-year statute of limitations begins to run contemporaneously therewith.
The problem with the majority opinion is that it assumes the point in issue: that the breach of the contract and the accrual of the cause of action occurred simultaneously. Once this assumption is made, the conclusion naturally follows. But the date of breach is not necessarily the accrual date of the cause of action. If the majority holds, as a matter of law, that breach and accrual are the same thing, then the majority has just overruled West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909). It is actionable breacha breach for which an action may be maintainedthat accrues the cause of action.
As the majority opinion states: "By its very nature it is the failure to construct the house in a workmanlike manner that constitutes the breach." Rather, the question is when did the breach become actionable? *286 The majority goes on to create a distinction between tort actions and contract actions with respect to "accrual." No authority is cited for this radical departure in the context of the matter under review. Indeed, the first-quoted paragraph from 51 Am.Jur. Limitations of Actions, §§ 126, 146 (1970), emphasizes the accrual of the cause of action as determinative of the applicable period of limitations for both contract and tort. That the cause of action accrues "usually [at] the time of the breach" is illustrated by such cases as Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala.1979). There, the claimed breach was for the failure to maintain an access road. Certainly, when the agreement sued upon is for the doing of an affirmative act, as soon as the time expires without the obligated party's performing as promised, the cause of action accrues.
That this is not one of those usual situations can be readily seen by simply posing the question: Suppose the Homeowners had filed suit the day following completion of their house for breach of warranty (failure to construct the house in a workmanlike manner)keeping in mind that the warranty was general in nature and not specific as to its details. Can there be any doubt as to the outcome of Plaintiffs' suit? The question is answered by West Pratt Coal Co.: The alleged damages are purely speculative, not just as to future compensatory loss, but as to any damages, including nominal damages; and this for the reason that no breach can be shown, to say nothing of the accrual of a cause of action.
FAULKNER and ADAMS, JJ., concur.
NOTES
[1] The defendants were an individual and a corporation controlled by him. The two defendants are referred to collectively as "Creel."
[1] For examples of such statutes, see § 6-2-3 (providing for the accrual of the cause of action for fraud upon discovery of facts constituting the fraud); § 6-5-482 (providing for the accrual of the cause of action for medical mal-practice upon discovery of injury); and § 6-5-502 (providing for the accrual of the cause of action for product liability upon discovery of certain personal injury).
[2] Although I have not changed my view expressed in the dissent in Garrett, my dissent herein accepts Garrett's rejection of the discovery rule.