I respectfully dissent.
The chronological sequence of events, as taken from the complaint, are:
 October, 1972 — Oral Agreement between Homeowners and Builders.
 November, 1972 — Builders complete construction contract.
 November, 1979 — Homeowners discover defects in the home.
April 14, 1982 — Complaint filed.
Although the parties reach different conclusions, they both agree upon the basic premise: that the period of limitations begins to run from the date of the accrual of the cause of action.
Chief Justice Torbert, speaking for the Court in Payne v.Alabama Cemetery Association, Inc., 413 So.2d 1067 (Ala. 1982), analyzed the Alabama case law relating to the accrual of a cause of action:
 "The time when the statute of limitations begins to run was analyzed thoroughly by this Court in Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979). In that case it was stated that the statute of limitations begins to run in favor of the party liable from the time the cause of action accrues, and the cause of action accrues as soon as the party in whose favor it arises is entitled to maintain an action thereon. 368 So.2d at 518. The plaintiff's ignorance of a tort or injury does not postpone the running of the statute of limitations until that tort is discovered. Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).
 "The statute, however, will not begin to run until some injury occurs which gives rise to a maintainable cause of action. Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925); West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909). As pointed out in Garrett v. Raytheon Co., the basic principle set forth by Corona Coal and West Pratt Coal on one hand, and Garrett v. Raytheon Co. on the other, are the same. In actions such as the case at bar, the act complained of does not itself inflict a legal injury at the time it is done, but plaintiff's injury only follows as a result and a subsequent development of the defendant's act. `In such cases, the cause of action "accrues," and the statute of limitation begins to run, "when and only when, the damages are sustained."' Garrett v. Raytheon Co., 368 So.2d at 519. See, also, Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).
 "Here, it was discovered in 1979 that the grave supposedly containing Emma Lee and Alzada Payne was sinking. It was then discovered that the bodily remains of Emma Lee were missing. At that particular point the plaintiff's injuries accrued, as she had nothing of which to complain until the discovery of the missing body and casket. This stands in *Page 284 
contrast to an injury of the type found in Garrett v. Raytheon Co., where the progressive nature of the injury has not made itself manifest at the time of the last exposure. In cases of that nature, the statute of limitations begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979); Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468
(1973). We therefore hold that the statute of limitations did not begin to run until May 13, 1979, when it was discovered that the bodily remains and casket of Emma Lee were missing and the injury to the plaintiff actually occurred."
Likewise, in Ramey v. Guyton, 394 So.2d 2 (Ala. 1980), interpreting the Medical Malpractice Act (§ 6-5-482), and finding that the cause of action accrued on the day Plaintiff suffered her stroke, the Court stated:
 "We find it patently unreasonable to attempt to fix the accrual date at the time the prescription was written, which act produced no concurrent injury to the Plaintiff."
The applicable rule is relatively simple to declare: In the absence of a statute,[1] the cause of action accrues, thus commencing the running of the six-year period of limitations, when the alleged breach becomes actionable; that is, when the action is maintainable, the cause of action accrues.
The application of the rule to the peculiar facts of this case is much more difficult. Indeed, these facts do not lend themselves to the solution contended for by either of the parties. Builders' "completion of the contract" date is unacceptable, because, clearly, on that day Homeowners had suffered no actionable breach. This is the precise point spoken to in Bonomi v. Backhouse, 9 H.L.Cas. 503, quoted in West PrattCoal Co. v. Dorman, 161 Ala. 389, 394, 49 So. 849 (1909):
 "`The contention on the part of the defendant is that the action must be brought within six years after the excavation is made, and that it is immaterial whether any actual damage has occurred or not. The jury, according to this view, would have, therefore, to decide upon the speculative question whether any damage was likely to arise; and it might well be that in many cases they would, upon the evidence of mineral surveyors and engineers, find that no damage was likely to accrue, when the most serious injury afterwards might in fact accrue, and in others find and give large sums of money for apprehended damage, which in point of fact never might arise. This is certainly not a state of law to be desired.'"
While the speculative nature of prospective damages, if any, to Homeowners' new residence left Homeowners without a cause of action, for damages based on breach of warranty on the date of its completion (there being no damages at that time), Homeowners' discovery of damages seven years later comes at a time far removed from the initial loss, giving rise to a cause of action for damages. Put another way, our case law does not support either the completion-of-the-contract date or the discovery-of-the-damages date as the time for the commencement of the running of the statute of limitations. Under these facts, the former comes before the accrual of the ex contractu cause of action and the latter after its accrual.
To commence the statute's running as of the completion date of the contract flies in the face of the principles laid down in West Pratt Coal Co. and Ramey v. Guyton, supra. The newly-purchased residence manifested no damage in 1972 which would support an actionable breach of the construction contract. By the same analysis, however, to commence its running from the Homeowners' *Page 285 
first becoming aware of the extreme decay damages in November, 1979, would be violative of Garrett's rejection of the discovery rule.[2] Indeed, Homeowners do not seriously contend, apart from the invocation of the discovery rule, that the alleged damage did not constitute an actionable breach at some point in time before November 1979.
Homeowners' discovery of the advanced structural damage, as shown by the pleadings in the instant case, is not to be confused with plaintiff's discovery of the "sinking" grave inPayne. The cause of action in Payne could not have accrued until plaintiff became aware of the defendants' conduct which allegedly resulted in plaintiff's personal injury. Contrary to the facts in the instant case, where the legal damage and the discovery of that damage are separated by length of time, the legal injury and the discovery of defendant's alleged wrongful conduct concurred in Payne, thus accruing the cause of action upon the incident of plaintiff's injury.
When, then, did Homeowners' cause of action accrue? Justice Maddox, speaking for the Court in Sims v. Lewis, 374 So.2d 298
(Ala. 1979), addressed this question:
 "Alabama has yet to have any case law specifying how long this warranty is to remain in effect after the sale of a new house. The better view is that, in the absence of a statute, the limit of liability is governed by reasonableness. Thus, whether the defect was discovered within a `reasonable' period would be a jury question. In no event, however, would the time limitation within which to file suit for implied warranty extend beyond the period allowed for filing suit on an express warranty (six years). Section 6-2-34, Code 1975."
The rule of "reasonableness" by which the builders' limit of liability is governed" has two separate, but related, dimensions.
First, the scope or coverage of the warranty is subject to reasonable limitations. Implied warranties of workmanship and fitness are not intended as endless guarantees against all structural defects. The second dimension relates more specifically to the accrual of the cause of action for breach of implied warranty. We can appreciate this aspect of the reasonableness rule by first understanding what it does not
mean. It does not mean, for example, that the jury is left to determine the time frame within which the homeowner must bring the suit after the cause of action accrues. That period is prescribed by law. § 6-2-34.
Instead, the jury, using the test of reasonableness, determines, under the evidence, when the actionable breach occurred. That is, the jury, having first found that the claimed breach comes within the scope of the warranty, as contemplated by the parties, must then determine, from the reasonable inferences of the evidence, when the damage, if any, occurred. If such damage results proximately from the builder's breach of contract, express or implied, and, if the damage is of such nature and extent as to support an actionable breach of warranty, a cause of action accrues and the six-year statute of limitations begins to run contemporaneously therewith.
The problem with the majority opinion is that it assumes the point in issue: that the breach of the contract and the accrual of the cause of action occurred simultaneously. Once this assumption is made, the conclusion naturally follows. But the date of breach is not necessarily the accrual date of the cause of action. If the majority holds, as a matter of law, that breach and accrual are the same thing, then the majority has just overruled West Pratt Coal Co. v. Dorman, 161 Ala. 389,49 So. 849 (1909). It is actionable breach — a breach for which an action may be maintained — that accrues the cause of action.
As the majority opinion states: "By its very nature it is the failure to construct the house in a workmanlike manner that constitutes the breach." Rather, the question is when did the breach become actionable? *Page 286 
The majority goes on to create a distinction between tort actions and contract actions with respect to "accrual." No authority is cited for this radical departure in the context of the matter under review. Indeed, the first-quoted paragraph from 51 Am.Jur. Limitations of Actions, §§ 126, 146 (1970), emphasizes the accrual of the cause of action as determinative of the applicable period of limitations for both contract and tort. That the cause of action accrues "usually [at] the time of the breach" is illustrated by such cases as Seybold v.Magnolia Land Co., 376 So.2d 1083 (Ala. 1979). There, the claimed breach was for the failure to maintain an access road. Certainly, when the agreement sued upon is for the doing of an affirmative act, as soon as the time expires without the obligated party's performing as promised, the cause of action accrues.
That this is not one of those usual situations can be readily seen by simply posing the question: Suppose the Homeowners had filed suit the day following completion of their house for breach of warranty (failure to construct the house in a workmanlike manner) — keeping in mind that the warranty was general in nature and not specific as to its details. Can there be any doubt as to the outcome of Plaintiffs' suit? The question is answered by West Pratt Coal Co.: The alleged damages are purely speculative, not just as to future compensatory loss, but as to any damages, including nominal damages; and this for the reason that no breach can be shown, to say nothing of the accrual of a cause of action.
FAULKNER and ADAMS, JJ., concur.
[1] For examples of such statutes, see § 6-2-3 (providing for the accrual of the cause of action for fraud upon discovery of facts constituting the fraud); § 6-5-482 (providing for the accrual of the cause of action for medical malpractice upon discovery of injury); and § 6-5-502 (providing for the accrual of the cause of action for product liability upon discovery of certain personal injury).
[2] Although I have not changed my view expressed in the dissent in Garrett, my dissent herein accepts Garrett's rejection of the discovery rule. *Page 591