285 So.2d 468

The HOME INSURANCE COMPANY, a corporation

v.

STUART–McCORKLE, INC., et al.

SC 155.

Supreme Court of Alabama.

Nov. 8, 1973.

Rehearing Denied Dec. 6, 1973.

Miller & Hoffmann, Montgomery, for appellant.

Oakley Melton, Jr., Montgomery, for appellee Virgil Rawson, d/b/a A–1 Roofing and Sheet Metal Contractors.

Hill, Hill, Stovall, Carter & Franco and William A. Oldacre and John M. Milling, Jr., Montgomery, for appellee Stuart–McCorkle, Inc.

Jones, Murray, Stewart & Yarbrough, Montgomery, for appellee Sherlock, Smith & Adams, Inc.

Ball, Ball, Matthews & Lamar, Montgomery, for appellee Dow Chemical Co.

**604**

BLOODWORTH, Justice.

This is an appeal by the Home Insurance Company (original defendant and third-party plaintiff) from an adverse judgment on its third-party claim against the four appellees (third-party defendants). We affirm, being convinced that the third-party action was barred by the statute of limitations.

The original action was filed by Schloss & Kahn against Home Insurance Company for benefits under an all-risk insurance policy issued to it by Home. The loss claimed was for damages due to ice in the walls and flooring of a large warehouse-size freezer unit used by Schloss & Kahn in its business. Home filed a third-party action against the contractor, Stuart–McCorkle, Inc.; the subcontractor, Virgil Rawson (doing business as A–1 Roofing and Sheet Metal Contractors); the architect, Sherlock, Smith & Adams, Inc.; and Dow Chemical Company; appellees herein. Home's third-party complaint claimed a right of subrogation against the third-party defendants for their alleged negligence in causing the damages complained of by Schloss & Kahn in the original action.

At trial, after the conclusion of the evidence presented by Schloss & Kahn and Home (and before any evidence was introduced by the third-party defendants), the cause was submitted to the jury on the original action only. The trial court granted affirmative charges in favor of

third-party defendants, Stuart–McCorkle and A–1 Roofing, on the grounds that the one-year statute of limitations applicable to negligence actions barred the suit. The trial court also granted affirmative charges in favor of third-party defendants, Sherlock, Smith & Adams, Inc. and Dow Chemical Company, on the grounds of insufficiency of the evidence.

The jury returned a verdict of $93,390 in favor of Schloss & Kahn against Home, and a verdict in favor of each of the third-party defendants. Judgment was entered accordingly. On this appeal, Home challenges only the judgment in favor of the third-party defendants claiming error in the action of the trial judge in granting the affirmative charges.

The facts of this cause are as follows. In November, 1968, Schloss & Kahn, a wholesale grocery firm, was having a new, large warehouse-size freezer addition built which was to adjoin, with a common wall, an existing freezer at its place of business in Montgomery, Alabama. Sherlock, Smith & Adams had provided architectural and engineering services in connection with the new addition; Stuart–McCorkle was the general contractor in charge of the project; A–1 Roofing was a subcontractor with responsibility for the roofing work on the new freezer; and Dow Chemical Company apparently published booklets on freezer construction which were consulted. (Appellant Home admits in brief that the affirmative charge was proper as to Dow; we will, therefore, pretermit further discussion of Dow's role in this case.)

On the morning of Friday, November 8, 1968, the contractor opened the roof in the old freezer unit in order to "tie" the roofs of the old and new freezers together. The roofers left the job about 10:00 a.m. that morning without having completed the joinder and leaving an open space between the two roofs. Heavy rains fell that weekend. On Monday, November 11, rainwater was discovered coming through this open space into an interior office (next to the freezer wall) and into the freezer units.

The water and resulting ice in the freezer unit were removed. There was damage to the plaster and paint in the office. No immediate evidence of damage to the structure was observed. However, on December 17, 1968, the doors in the common wall were cut and ice was observed in the insulation of the wall.

On December 30, 1968, Stuart–McCorkle wrote a letter to Schloss & Kahn, with copies to various parties, in which it stated that, in its opinion, the parties should wait until the next summer to see if any damage had been done to the freezer.

No other effects of the water were noticed until December 7, 1970, when a crack was noticed in the freezer floor. The damage has increased since that date, apparently due to continued expansion of ice in the walls and flooring caused by the rainwater which fell in November, 1968.

■ The first matter presented for our consideration is a motion by appellees to dismiss this appeal. Appellees argue that the appeal of only the judgment on the third-party complaint amounts to a severance of the original action and the third-party action contrary to the rule announced in F. R. Hoar & Son, Inc. v. Florence, 287 Ala. 158, 249 So.2d 817 (1971).

With this we cannot agree. The *Hoar* case involved severance of an original action and a third-party action for separate trial which we found was not authorized by Title 7, § 259, Code of Alabama, as amended. Neither the *Hoar* case nor Code § 259, however, addresses itself to the issue of the appealability of a verdict and judgment on a third-party complaint. We can see no sound reason for extending the doctrine of the *Hoar* case. There is at least one sound reason to permit this appeal, namely that to hold otherwise would foreclose a review of the third-party claim alone.

Turning now to the merits of this cause, third-party plaintiff, Home, argues that the

trial judge committed reversible error in granting the affirmative charge in favor of third-party defendants, Stuart–McCorkle and A–1 Roofing. It is Home's contention that the one-year statute of limitations did not begin to run until the damage to the structure was discovered on December 7, 1970, and that the filing of the original action by Schloss & Kahn against Home on December 3, 1971 (within one year from that date) tolled the statute of limitations as to the third-party defendants; or, in the alternative, that the statute of limitations did not begin to run until Home incurred liability to Schloss & Kahn; or, finally, that the third-party defendants are estopped by statements in the letter of December 30, 1968, from asserting the statute of limitations.

Home contends that the trial judge committed reversible error in granting the general affirmative charge in favor of third-party defendant, Sherlock, Smith & Adams, Inc. Home argues that the use of hollow brick in the interior freezer wall, which would permit ice to form in the wall, despite warnings against such a practice by Dow publications (upon which the architects admittedly relied in designing freezers), was sufficient evidence to require the question of the architects' negligence to go to the jury under the rule in Lawson v. General Telephone Company of Alabama, 289 Ala. 283, 267 So.2d 132 (1972). Home also adopts the same theory with respect to the statute of limitations as it argues with respect to the other third-party defendants.

Appellees variously contend the following: that the statute of limitations commenced to run November 11, 1968 (when the water first entered the building); that, even if the statute of limitations did not begin to run until December 7, 1970 (when the extensive damage was seen), the statute was not tolled until the third-party claim was filed on March 15, 1972; and, finally, appellee Sherlock, Smith & Adams argues that the record is devoid of evidence of its negligence.

In view of the result we reach, it is only necessary to consider whether or not the action against the third parties was barred by the statute of limitations.

Appellant Home contends that the statute of limitations did not commence to run against it, as a third-party plaintiff, until judgment was entered against it in the original action or alternatively until the judgment was paid. In support of this proposition, Home cites the following cases: Kantlehner v. United States, 279 F.Supp. 122 (E.D.N.Y.1967); Wolverine Ins. Co. v. Tower Iron Works, Inc., 370 F.2d 700 (1st Cir. 1966); United States v. Farr & Co., 342 F.2d 383 (2d Cir. 1965); Southern Maryland Oil Co. v. Texas Co., 203 F.Supp. 449 (D.Md.1962); Fidelity & Casualty Co. of New York v. Jones Construction Co., 200 F.Supp. 264 (E.D.Ark. 1961), aff'd 325 F.2d 605 (2d Cir.); Globig v. Greene & Gust Co., 184 F.Supp. 530 (E.D.Wis.1960); Vaughn v. Terminal Transport Co., Inc., 162 F.Supp. 647 (E.D. Tenn.1957); Chicago, Rock Island & Pacific Ry. Co. v. United States, 220 F.2d 939 (7th Cir. 1955); Adam v. Vacquier, 48 F. Supp. 275 (W.D.Pa.1942); Rizzo v. Steiner, 36 Misc.2d 701, 233 N.Y.S.2d 647 (1962).

■ These cases are inapposite. A careful reading of them reveals that each deals with indemnity or contribution or both among joint tort-feasors. In Alabama, one of several joint tort-feasors cannot enforce contribution from the others. Gobble v. Bradford, 226 Ala. 517, 147 So. 619 (1933). Some of those jurisdictions follow a different rule as to contribution. In any event, the instant case involves the rights of Home in subrogation, not in indemnity and contribution.

It should be mentioned that in one of the cases cited, Fidelity & Casualty Co. of New York v. Jones Construction Co., supra, an action for indemnity and contribution by a subrogee of a joint tort-feasor was involved. But, the court in that case dealt only with the statute of limitations as

limiting the rights of a third-party plaintiff joint tort-feasor. The court appears to have assumed that the right of a subrogee to bring a cause of action is determined by whether or not the joint tort-feasor could have maintained the action. The rights of the subrogee, as subrogee, are not considered. This case is, then, inapposite. The same is true of the case of Wolverine Ins. Co. v. Tower Iron Works, Inc., supra.

Appellant also cites Smith v. Pitts, 167 Ala. 461, 52 So. 402 (1910), which was a suit by a surety to set aside allegedly fraudulent conveyances made by a principal debtor and for reimbursement of the surety for the sum paid by him in the discharge of the principal's debt to a creditor. In *Smith,* the following statement appears:

"Since the surety's cause of action, in such cases, does not accrue until he has paid the debt of his principal, neither the statute of limitations nor adverse possession will begin to run until such payment. Washington v. Norwood, supra [128 Ala. 382, 30 So. 405]; Bragg v. Patterson, supra [85 Ala. 233, 4 So. 716]; 27 Am. & Eng.Ency.Law, pp. 481, 482."

This is mere obiter dictum. Moreover, we cannot agree that the rights of a surety are the same as that of a subrogee. While we find no Alabama cases expressly making this distinction, we are directed to Couch 2d Insurance, § 61.33, which states the distinction between "subrogation" and "surety status" as follows:

"The insurer, when subrogated, is merely an insurer and does not have the rights of a surety with respect to the claim against the third person to which it is subrogated. * * *

"The right of the insurer to be subrogated has been compared to that of a surety who, upon payment of a debt, may resort to the principal debtor. This is not a helpful analysis for the reason that the surety has a right of indemnity against the principal and could recover from him for the payments made because of his default, without regard to whether the principle of subrogation was applied to transfer to the surety the rights of the obligee or other persons. Such analysis is also not helpful for the further reason that if the indemnity aspect is ignored, the surety's right against its principal is merely another illustration of the application of the theory of subrogation rather than of a basic principle from which the ordinary insurer's right of subrogation is derived."

With this distinction in mind, it is clear that the *Smith* case was an action for indemnity by a surety, and is therefore irrelevant to the question of the rights of Home as subrogee in the case at bar.

■ Turning now to the Alabama cases on subrogation, we find the well established rule that a subrogee can acquire no greater rights than those possessed by the principal whose rights he asserts. In Crutchfield v. Johnson & Latimer, 243 Ala. 73, 8 So.2d 412 (1942), this court stated the rule as follows:

"A person entitled to subrogation must work through the creditor whose rights he claims. He stands in the shoes of the creditor and is entitled to the benefit of all the remedies of the creditor and may use all means which the creditor could to enforce payment. * * * But he can only enforce such rights as the creditor could enforce, and must exercise such rights under the same conditions and limitations as were binding on the creditor, and hence, can be subrogated to no greater rights than the one in whose place he is substituted. * * *" [Citations omitted]

In accord: Turner v. Lumbermens Mutual Ins. Co., 235 Ala. 632, 180 So. 300 (1938); Houston v. Branch Bank at Huntsville, 25 Ala. 250 (1854); Colvin v. Owens, 22 Ala. 782 (1853).

Furthermore, this court has specifically held this principle applicable to the running

of the statute of limitations. In American Bonding Co. v. Fourth National Bank, 205 Ala. 652, 88 So. 838 (1921), involving a suit by a surety suing as subrogee of a cestui que trust against a third party who participated in the misappropriation by the surety's principal of money belonging to the cestui que trust, this court stated:

"* * * The complainant, the bonding company, as surety for Estelle Manegold, seeks to be subrogated to her rights in the enforcement of the claim against the bank, but the complainant as surety can stand in no higher position than the principal. Colvin v. Owens, 22 Ala. 782; Houston, Ex'r, v. Branch Bk., 25 Ala. 250. This principle is likewise applicable so far as the running of the statute of limitations is concerned. 17 R.C.L. 833."

We note that the surety in *American Bonding* was not suing for indemnity against his principal as was the surety in Smith v. Pitts, supra, but rather was suing as subrogee against a third party against whom he had no right of indemnity.

The rule stated in *American Bonding* is in accord with the overwhelming weight of authority in other jurisdictions. See 3 Moore's Federal Practice [¶ 14.09]; Appleman, Insurance Law & Practice, § 4102; 16 Couch 2d, Insurance, § 61:230.

▮ Appellant Home also argues that Title 7, § 259(2), Code of Alabama, as amended, which provides for filing of third-party complaints "any time after commencement of a civil action," supports its position. This argument is without merit. Section 259(2), which is patterned after Rule 14 of the Federal Rules of Civil Procedure, is strictly procedural and does not create new substantive rights. 3 Moore's Federal Practice [¶ 14.03, 14.-09].

▮ We, therefore, conclude that the statute of limitations began to run against appellant Home at the same time it began to run against its insured, Schloss & Kahn, on December 17, 1968, at the latest.

▮ It is clear from our cases that the statute of limitations begins to run when the cause of action accrues, and that the cause accrues as soon as the party in whose favor it arises is entitled to maintain an action thereon. Henslee v. Merritt, 263 Ala. 266, 82 So.2d 212 (1955); Brown v. First National Bank of Montgomery, 261 Ala. 565, 75 So.2d 141 (1954); Esslinger v. Spragins, 236 Ala. 508, 183 So. 401 (1938); Larue v. C. G. Kershaw Contracting Co., 177 Ala. 441, 59 So. 155 (1912).

We have held that the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. In Kelly v. Shropshire, 199 Ala. 602, 75 So. 291, 292 (1917), the rule was stated as follows:

"If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered."

Nor do the cases cited to us by appellant Home modify this rule. Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925) (flooding of basement causing rusting of heating plant) and West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909) (underground mining causing subsidence of surface land) merely state the well established rule that the statute will not begin to run until some injury occurs which gives rise to a maintainable cause of action.

Reviewing the facts in this cause, we find that, as a result of the open space left in the roof, rainwater poured into the freezer and office of Schloss & Kahn on November 11, 1968; ice had to be removed with sledge hammers and shovels before the freezer could be used; the entire office had to be repainted; and finally, ice was discovered in the walls on December 17, 1968. Even without any subsequent damage, Schloss & Kahn as of December 17, 1968, at the latest, had suffered legal injury from the alleged negligent acts of November 8, so as to entitle it to maintain a cause of action against the third-party defendants. The statute of limitations began to run at that time.

The applicability of Act No. 788, Acts of the Legislature, Regular Session 1969, Vol. II, p. 1418, approved September 12, 1969 [now Title 7, § 23(1)], was not raised in the trial court nor was it cited or argued to us on this appeal. By its very terms, Act No. 788 applies only to causes of action arising subsequent to its effective date, i. e., September 12, 1969. (This Act provides for a four-year statute of limitations in actions against persons who performed or furnished the design, planning, supervision or construction of improvements on real estate arising out of contract or tort.)

Since it is our conclusion that this cause of action arose at the latest on December 17, 1968, the applicable statute of limitations is the one-year period prescribed by Title 7, § 26, Code of Alabama, as amended, rather than the four-year period prescribed by Act No. 788 [Title 7, § 23(1)].

The statute of limitations of one year therefore barred this action as of December, 1969, at the latest. Having so concluded, we need not consider appellant Home's argument that the filing of the suit by Schloss & Kahn on December 3, 1971, tolled the statute of limitations as against the third-party defendants.

Appellant's final contention is that the third-party defendants are estopped from asserting the defense of the statute of limitations by virtue of the letter of December 30, 1968, from Mose Stuart, President of Stuart-McCorkle, to Schloss & Kahn, in which it was stated:

"It is my opinion that this case should be held open at least until next summer and possibly then we can determine what damage, if any, has been done to the freezer."

Even if we considered this statement to be sufficient to invoke the doctrine of waiver or estoppel of the statute of limitations against one or more of the third-party defendants in this cause, it clearly appears that such waiver or estoppel, by its terms, ended in the summer of 1969. The statute of limitations would still bar the third-party complaint. For, even assuming there was an estoppel, the cause of action still arose before the effective date of the four-year statute of limitations (September 12, 1969), and the complaint was filed more than one year after the termination of the alleged estoppel in the summer of 1969.

It, therefore, appears that the statute of limitations barred the third-party action and that the trial court was correct in granting the general affirmative charge in favor of each of the third-party defendants. Having reached this conclusion, it is unnecessary for this court to consider the other arguments presented by the appellees to justify the giving of the affirmative charges.

The motion to dismiss the appeal is denied.

The judgment is due to be, and is, affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, McCALL and JONES, JJ., concur.