569 So.2d 702 (1990)
Howard A. McWILLIAMS and Mary A. McWilliams
v.
UNION PACIFIC RESOURCES COMPANY, et al.
89-97.
Supreme Court of Alabama.
September 28, 1990.
Edward P. Turner, Jr. and Halron W. Turner of Turner, Onderdonk & Kimbrough, Chatom, for appellants.
Broox G. Holmes, Kirk C. Shaw and Broox G. Holmes, Jr. of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellee Union Pacific Resources Co.
James C. Johnston of Johnston, Hume & Johnston, Mobile, for appellee Kennedy Agriculture & Supply, Inc.
Norton W. Brooker, Jr. and Joseph J. Minus, Jr. of Lyons, Pipes & Cook, Mobile, for appellee Dowell Schlumberger, Inc.
ADAMS, Justice.
This is an appeal from a summary judgment in favor of Union Pacific Resources *703 Company,[1] Dowell Schlumberger, Inc., and Kennedy Agriculture and Supply, Inc., in an action filed by the McWilliamses for damages based on trespass, negligence, wantonness, and strict liability. The trial court entered summary judgment with regard to all counts, holding that the statutory period of limitations had run. Because the applicability of the statute of limitations argument applies to all parties, hereinafter all appellees shall be referred to collectively as "Union Pacific." We reverse and remand.
In 1984, Union Pacific contracted to drill a wildcat oil well on the McWilliamses' property. After drilling was completed, the well was determined to be a "dry hole," and plugging and abandonment operations began in November of that year. Union Pacific contracted with Kennedy Agriculture to pump the drilling fluids from the reserve pit back into the well and contracted with Dowell Schlumberger to plug the well. These operations were completed on November 15, 1984. In the spring of 1986, the McWilliamses noticed that water was seeping from the reclaimed ground in the area overlying the site of the well. In July 1986, this leakage was discovered to be saltwater and, after Union Pacific and the State Oil and Gas Board were notified, Union Pacific was ordered to replug the well and was fined $1,500 for violation of the Board rules and regulations regarding the plugging and abandonment of the well.[2]
As a result of damage to their property, the McWilliamses sued Union Pacific, for damages based on trespass, negligence, wantonness, and strict liability. The complaint was filed in June 1987; the trial judge granted Union Pacific's motion for summary judgment on all counts. With regard to the McWilliamses' trespass claim, the trial judge stated that the McWilliamses' case, at most, gave rise to an action in trespass on the case, which is governed by a two-year statute of limitations, rather than in trespass, which is governed by a six-year statute of limitations.[3] The McWilliamses appeal, contending that their cause of action is subject to the six-year statute of limitations and that, in the alternative, the trial judge erred in determining that the two-year statute began to run on the date that the well was plugged and abandoned, i.e., November 15, 1984. Their argument with regard to the date the statute of limitations began to run is also applicable to their negligence, wantonness, and strict liability claims. Because, for the following reasons, we hold that the applicable statute of limitations began to run later than the November 15, 1984, date found to be applicable by the trial judge, we consider it unnecessary to discuss whether the McWilliamses' claim sounds in trespass or in trespass on the case.
"The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action `accrues.' The cause of action `accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon.
"`We have held that the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. In Kelly v. Shropshire, 199 Ala. 602, 75 So. 291, 292 (1917), the rule was stated as follows:
"`"If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrued and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and *704 the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered."
"`Nor do the cases cited to us by appellant Home modify this rule. Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925) (flooding of basement causing rusting of heating plant) and West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909) (underground mining causing subsidence of surface land) merely state the well established rule that the statute will not begin to run until some injury occurs which gives rise to a maintainable cause of action.
"`....'
"Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 608, 285 So.2d 468, 473 (1973).
"The class of cases exemplified by Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925), and West Pratt Coal Co. v. Dorman, expresses the same rule although in a different context, and the basic principle is the same. Thus, there are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action "accrues,' and the statute of limitation begins to run, `when, and only when, the damages are sustained.' Over sixty years ago, Justice Sayre so expressed it in his opinion for the Court in Kelly, et al. v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).
"In West Pratt Coal plaintiff's upper soil cracked open and settled down several years after mining had taken place beneath the surface. Plaintiff brought suit within one year after the soil settled. In stating that the statute had not run, the Court held that the plaintiff had nothing of which to complain until the enjoyment of the lot was interfered with by the settling of the soil, i.e., no cause of action had `accrued' until that time."
Garrett v. Raytheon Co., 368 So.2d 516, 518-19 (Ala.1979). (Emphasis added in Garrett.) We find the present case analogous to those cases mentioned in Garrett wherein the damage complained of occurred at a date later than the actions of the defendants. In this case, the McWilliamses' cattle were not destroyed, nor was the vegetation on their land killed, at the time Union Pacific is alleged to have improperly plugged the well in question. In West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909), the plaintiff's damage was sustained years after the incident that caused that damage. Garrett v. Raytheon Co., supra, at 519. In the case sub judice, likewise, the McWilliamses sustained damage to their land at a later date than the plugging of the well. The statutory period of limitations should not be held to begin running as of the plugging of the well, but, rather, on the date when the damage was allegedly sustained by the McWilliamses.
Therefore, the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., concurs specially.
MADDOX, Justice (concurring specially).
While I concur with the majority in reversing the trial court's determination that the statutory limitations period began to run as of the plugging of the well, I must comment specially on this Court's direction to the trial court to find that the limitations period should begin to run when the cattle and vegetation died.
*705 As I understand it, there are two lines of cases dealing with the tolling of the statute of limitations where the damages became apparent only sometime after the actual wrong was committed. The first line of cases deals with wrongful acts that cause a legal injury to the plaintiff although that injury is not apparent. Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917); Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972); Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979).
In each of those cases, not only was the act itself a legal injury to the plaintiff, but the plaintiff failed to file suit within any reasonable time after his injury had occurred. For example, in Raytheon Co., the plaintiff was exposed to radiation at his work place, his last exposure to radiation occurring over 20 years before his injury was diagnosed and he brought suit. In that case, this Court settled the question of the "accrual" of the plaintiff's claim in his radiation-exposure case for purposes of determining when the applicable limitations period begins to run. The Court stated:
"`"If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight.... [The] plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by the defendant, [does not] postpone the running of the statute until the tort or injury is discovered."'"
Garrett, 368 So.2d at 519, quoting Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917), as quoted in Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 608, 285 So.2d 468, 473 (1973) (emphasis added).
Garrett was legally injured as of the date of his last exposure to radiation, when there was a "completed injury," not when he discovered his injury 20 years later.
In contrast, the second line of cases deals with situations where the act itself is not a legal injury; the plaintiff's injury comes only as a result of what the defendant has done. West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925); Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973). In these cases, which I believe are more factually similar to the case at hand, the cause of action accrued and the limitations period began to run when the damages were sustained.
The Dorman case is most similar to this case in facts and legal reasoning. There, the soil cracked open several years after the mining had taken place underneath the surface. The Court cited to the observations of Lord Cranworth in the leading case of Bonomi v. Backhouse, 9 H.L.C. 503, 11 Eng.Rep. 825 (1861), to illustrate when the damages were "sustained". Lord Cranworth stated:
"I think the error in the view which has sometimes been taken upon this subject, is this: It has been supposed that the right of the party whose land is interfered with is a right to what is called the pillars, or the support. In truth his right is a right to the ordinary enjoyment of his land, and till that ordinary enjoyment is interfered with he has nothing of which to complain."
Bonomi, 9 H.L.C. at 512, 11 Eng.Rep. at 828.
When I analogize the issues in Bonomi and Dorman to those of the case at hand, I conclude that the limitations period would not begin to run until "some actual mischief has been done to the upper soil." Dorman, 161 Ala. at 393, 49 So. at 851. In the present case, the "interference with the utility and enjoyment of the superincumbent soil," Dorman, 161 Ala. at 394, 49 So. at 851, did not take place until, at the earliest, the McWilliamses noticed in the spring of 1986 that water was seeping from the ground overlying the site of the well. At the latest, the McWilliamses suffered legal injury in July 1986, when this leakage was discovered to be salt water.
While I joined in the Raytheon Co. case, which expressly refused to adopt the "discovery rule," I feel this case is more similar to the facts and reasoning set forth in Dorman. In essence, Dorman adopted a discovery rule for subterranean real property damage cases. Furthermore, other oil *706 and gas producing states, such as Texas, Arkansas, and Oklahoma, have adopted the discovery rule in similar salt water damage cases. See Bayouth v. Lion Oil Co., 671 S.W.2d 867 (Tex.1984); Peppers Refining Co. v. Spivey, 285 P.2d 228 (Okla.1955); Sunray DX Oil Co. v. Thurman, 238 Ark. 789, 384 S.W.2d 482 (1964).
In Bayouth, the court stated:
"An action for permanent damages to land accrues, for limitation purposes, upon discovery of the first actionable injury and not on the date when the extent of the damages to the land are fully ascertainable. Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W.2d 336 (1954). An action for permanent damages to land must be brought within two years from the time of discovery of the injury."
671 S.W.2d at 868.
This Court has not had an opportunity to apply the general rules relating to limitations of actions in the context of the escape of deleterious substances from an oil and gas well. Because Alabama has only recently become an oil producing state, I have looked to the law of other oil producing states for guidance. Those courts whose cases I cite have examined their law and have determined that the most logical point at which to begin the running of the limitations period for an action involving permanent injury to realty is when that damage has become apparent and it becomes obvious that the injury is of a permanent character.[1]
The question as to when the statutory limitations period begins to run is generally a question of fact for the jury to determine. Here, there is evidence that the McWilliamses first knew of the water leakage in the spring of 1986; however, there was evidence that the damage became obvious only in July 1986.
The legal justifications for the rule that an action for damage to land accrues, for limitations purposes, upon discovery of the first actionable injury were aptly stated in Bonomi, as quoted by this Court in Dorman:
"`The contention on the part of the defendant is that the action must be brought within six years after the excavation is made, and that it is immaterial whether any actual damage has occurred or not. The jury, according to this view, would have, therefore, to decide upon the speculative question whether any damage was likely to arise; and it might well be that in many cases they would, upon the evidence of mineral surveyors and engineers, find that no damage was likely to accrue, when the most serious injury afterwards might in fact accrue, and in others find and give large sums of money for apprehended damage, which in point of fact never might arise. This is certainly not a state of the law to be desired.'"
161 Ala. at 394, 49 So. at 851.
For the above stated reasons, I hereby concur specially with the opinion of this Court.
NOTES
[1] Union Pacific Resources Company was initially known as Champlin Petroleum Company, but the name was changed on May 12, 1987.
[2] It was determined during the replugging operations that a surface plug had not been placed in the well (or had dissolved) and that, as a result, the surface casing had split. Salt water was found to be leaking from inside the surface casing of the well at the rate of approximately 10 barrels per day.
[3] The one-year statute of limitations for trespass on the case (§ 6-2-39, Ala.Code 1975) was repealed effective January 9, 1985, and that action was transferred to the two-year limitations statute, § 6-2-38. See Act 85-39, Ala. Acts 1984-85.
[1] The courts of Texas, Oklahoma and Arkansas make a distinction between injuries to realty that are temporary and those that are permanent in nature. In those courts, permanent injuries to land give rise to permanent damages, and temporary injuries give rise to temporary damages. Furthermore, they each have a separate point at which the limitations period is tolled.

"An action for permanent damages to land must be brought within two years from the time of discovery of the injury. Article 5526, V.A.T.S. Damages for temporary injuries may be recovered for the two years prior to filing suit.
"The character of an injury as either permanent or temporary is determined by its continuum. Permanent injuries to land result from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely; the injury must be constant and continuous, not occasional, intermittent or recurrent. Temporary injuries, however, have been found where the injury is not continuous, but is sporadic and contingent upon some irregular force such as rain. Kraft v. Langford, 565 S.W.2d 223 (Tex. 1978)."
Bayouth v. Lion Oil Co., 671 S.W.2d 867, at 868-69 (Tex.1984).
This distinction, however, is not at issue in this case.