[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13612

_____

D.C. Docket No. 2:09-cv-01139-RBP

BUSINESS REALTY INVESTMENT COMPANY, INC.,

Plaintiff-Appellant,

versus

INSITUFORM TECHNOLOGIES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 1, 2014)

Before ANDERSON and EBEL,* Circuit Judges, and UNGARO,** District
Judge.

_____

*Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by
designation.

**Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida,
sitting  by designation.

PER CURIAM:

Plaintiff-Appellant Business Realty Investment Company, Inc. ("BRIC") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Insituform Technologies, Inc. ("Insituform"). The district court granted summary judgment in favor of Insituform, finding (1) Insituform was not a state actor under 42 U.S.C. § 1983; and (2) the statute of limitations had run on BRIC's Alabama trespass claim. After careful review of the record and the briefs, and with the benefit of oral argument, we affirm.

BRIC owns the Westhaven Subdivision in Birmingham, Alabama. In 1991, BRIC installed a sanitary sewer system in the Westhaven Subdivision. In 1998, a federal district court issued a Consent Decree finding Jefferson County violated the Clean Water Act. To comply with this Consent Decree and the Clean Water Act, Jefferson County awarded a contract to the joint venture of Roland Pugh Construction, Inc. ("Roland Pugh") and Insituform to rehabilitate the County's sanitary sewer system. Between June 2000 and June 1, 2001, the joint venture performed the work required under the contract. This included Roland Pugh filling in BRIC's Westhaven Subdivision sewer system with cement and grout.

BRIC discovered the cement and grout in the spring of 2007 when it sold property adjacent to the Westhaven Subdivision to the Greater Shiloh Baptist Church.

2

BRIC requested the County remove the grout and cement, but these requests were denied. BRIC ultimately repaired the sanitary sewer system at a cost of $381,501.78.

BRIC filed a complaint against Jefferson County on June 5, 2009.[1] On August 16, 2011, BRIC amended its complaint to add Insituform as a party and allege violations of § 1983 and Alabama trespass laws.[2]

BRIC appealed the district court's grant of summary judgment arguing the trial court erred when it found (1) Insituform was not a state actor under § 1983; and (2) the statute of limitations had run on its Alabama trespass claims. BRIC further argues the district court abused its discretion in exercising supplemental jurisdiction over BRIC's state law claims after dismissing the § 1983 claim.

We review the district court's grant of summary judgment *de novo*. *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999). Thus, on appeal we apply the same standard for summary judgment as the district court: viewing the evidence in the light most favorable to BRIC, if it appears that there is "no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law,"

---

[1] BRIC's case against Jefferson County was stayed prior to the district court's summary judgment order because the County filed for bankruptcy in 2011.

[2] BRIC also alleged inverse condemnation, but agreed that this claim was due to be dismissed prior to the district court granting summary judgment.

3

we must affirm summary judgment for Insituform. *See* Fed. R. Civ. P. 56(a); *Watkins*, 190 F.3d at 1216. We review the district court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367 for an abuse of discretion. *Estate of Amergi ex rel. Amergi v. Palestinian Authority*, 611 F.3d 1350, 1356 (11th Cir. 2010).

## I. BRIC's § 1983 CLAIM

There are two elements to a § 1983 claim: (1) conduct committed by a person acting under color of state law; and (2) that conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Fullman v. Graddick*, 739 F.2d 553, 561 (11th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

"Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)) (internal quotations omitted). This Court has set forth three separate tests for determining when a private entity is acting as a state actor: (1) the "State compulsion test," where the state has coerced the action alleged to violate the Constitution; (2) the "public function test," where the private actor is performing a public function that was traditionally the exclusive prerogative of the State; (3) the "nexus/joint action test," where the State has so far insinuated itself into a position of interdependence

4

with the private parties that it was a joint participant in the enterprise. *Rayburn*, 241 F.3d at 1347. A private party does not become a state actor simply because it contracts with the government. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982).

BRIC argues that Insituform was a state actor because it was in a symbiotic relationship, or joint action, with Jefferson County when its joint venturer, Roland Pugh, filled in BRIC's sewer system with cement and grout pursuant to its contract with Jefferson County. BRIC also argues that the federal district court's Consent Decree clothed the joint venture with state authority. Viewing the evidence in the light most favorable to BRIC, the district court's grant of summary judgment was proper.

There is no evidence that Insituform was anything other than an arms-length contractor with Jefferson County. The contract between Jefferson County and the joint venture provides that the "Contractor shall be <u>solely</u> responsible for the means, methods, the techniques, sequences, and procedures of construction." D.E. 90 at 19 (emphasis added). Thus, this is not a case where Jefferson County had "so far insinuated itself into a position of interdependence" with Insituform that Insituform was "merely a surrogate for the state." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1278-79 (11th Cir. 2003). The Consent Decree also does not create an interdependent relationship between Insituform and Jefferson

5

County.  It imposed a requirement on Jefferson County to rehabilitate its sanitary sewer system and Jefferson County contracted with the joint venture to comply with this mandate.  This decree does not further insinuate Jefferson County in the actions taken by the joint venture.  Accordingly, the district court's holding that Insituform is not a state actor under 42 U.S.C. § 1983 is affirmed.

## II.    BRIC's ALABAMA TRESPASS CLAIM

As a preliminary matter, we find that the district court did not abuse its discretion by exercising supplemental jurisdiction over BRIC's Alabama trespass claim after it granted summary judgment on BRIC's § 1983 claim.  Under 28 U.S.C. § 1367(c), a district court has the discretion to decline to exercise supplemental jurisdiction over pending state law claims if the district court has dismissed all federal claims prior to trial.  The district court may consider judicial economy, convenience, fairness, and comity in deciding whether or not it should exercise supplemental jurisdiction.  *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).  Here, similar to *Jones v. Spherion Atlantic Enterprise, LLC*, the district court did not abuse its discretion in exercising supplemental jurisdiction because the state claims involved the same incidents, there were no complex or novel state law issues, and ruling on all of BRIC's claims served judicial economy.  493 F App'x 6, 11 (11th Cir. 2012).  The district court's quote from an Alabama Supreme Court case

6

stating that the distinction between trespass and trespass on the case is a "quagmire in Alabama jurisprudence"[3] did not mean that there were novel or complex state law issues that precluded the exercise of supplemental jurisdiction.    D.E. 93 at 6 ("[W]hether considered as trespass or trespass on the case, the statute of limitations period ran prior to the filing of this action.").

BRIC challenges the district court's findings that BRIC's cement-filled sewer system was a permanent trespass and that BRIC's cause of action accrued on June 1, 2001. We address each of these in turn.  BRIC also argued on appeal that Insituform fraudulently concealed the destruction of BRIC's sewer system.  As this claim was not part of the pleadings, the various motions to dismiss, the motions for summary judgment, or any objections to the magistrate judge's report and recommendation, we do not address this issue.  *See Denis v. Liberty Mut. Ins. Co.*, 791 F.2d 846, 848-49 (11th Cir. 1986) ("Failure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal.").

## A.    Permanent v. Continuing Trespass

Under Alabama law, trespass is the "entry on the land of another without express or implied authority."  *Central Parking Sys. of Ala., Inc. v. Steen*, 707 So. 2d 226, 228 (Ala. 1997).  "Once committed, the trespass is permanent, and an aggrieved

---

[3]*McKenzie v. Killian III*, 887 So. 2d 861, 866 (Ala. 2004).

landowner must bring his action within the period allowed by the statute." *Motisi v. Ala. Gas Corp.*, 485 So. 2d 1157, 1158 (Ala. 1986).  The statute of limitations is six years for trespass and two years for trespass on the case.  Ala. Code §§ 6-2-34, 6-2-38 (1975).  "A structure maintained on another's property is a continuing trespass" that "creates successive causes of action" *Ala. Power Co. v. Gielle*, 373 So. 2d 851, 854 (Ala. Civ. App. 1979).

The following structures have been found to be permanent trespasses under Alabama law:  (1) a gas pipeline that was continuously used to conduct gas from its installment; (2) a retaining wall; and (3) fiber optic cables that were used to transmit light pulses.  *See Motisi*, 485 So. 2d at 1158; *Devenish v. Phillips*, 743 So. 2d 492, 494 (Ala. Civ. App. 1999); *In re Worldcom, Inc.*, 339 B.R. 836, 844 (S.D.N.Y. 2006). In contrast, a power pole and a boat dock with a boat ramp have been found to be continuing trespasses under Alabama law.  *See Gielle,* 373 So. 2d at 854; *Gatlin v. Joiner*, 31 So. 3d 126, 135 (Ala. Civ. App. 2009).  No Alabama court has attempted to reconcile these cases.

Under *Motisi*, the only Alabama Supreme Court case on this issue, BRIC's cement and grout filled sewer system is a permanent trespass.  There is nothing that distinguishes a filled-in underground sewer system from the installation of an underground gas pipe or underground fiber optic cables.  BRIC's grout-filled sewer

8

is arguably a more permanent trespass than the trespasses in *Motisi* and *In re Worldcom* because it had no continuing use after being filled with cement and grout. Unlike the power pole or boat dock in *Gielle* and *Gatlin*, which conceivably required maintenance and repeated intrusions by other people, the sewer system was abandoned after it was filled with cement and grout until BRIC had the opportunity to sell the adjacent land to the church. The insertion of cement and grout into BRIC's sewer system thus created a "permanent change to the land, with a continuing harm." *Devenish*, 743 So. 2d at 494.

## B.    Accrual of action

Under Alabama law, "the statute of limitations begins to run when the cause of action accrues, and [] the cause accrues as soon as the party in whose favor it arises is entitled to maintain an action thereon." *Home Ins. Co. v. Stuart-McCorkle, Inc.*, 285 So. 2d 468, 473 (Ala. 1973). This is true "whether or not the full amount of damages is apparent at the time of the first legal injury." *Id.* "[P]laintiff's ignorance of the tort or injury" does not "postpone the running of the statute until the tort or injury is discovered." *Id.* (quoting *Kelly v. Shropshire*, 75 So. 2d 291, 292 (1917)).

BRIC argues that its legal injury did not occur until it learned that the sewer system had been filled in because there was no "interference with the utility and enjoyment" of its property before this realization. BRIC's argument is not persuasive.

9

The cases BRIC cites stand for the idea that a legal injury may accrue long after a defendant's actions take place. *See McWilliams v. Union Pac. Res. Co.*, 569 So. 2d 702, 704 (Ala. 1990); *Corona Coal Co. v. Hendon*, 104 So. 799, 801 (Ala. 1925); *West Pratt Coal Co. v. Dorman*, 49 So. 849, 851 (Ala. 1909). In *McWilliams*, the defendant legally drilled an oil well on plaintiff's property. 569 So. 2d at 703. An injury did not occur until two years after the well was completed when saltwater began leaking onto plaintiffs' property, killing the plaintiffs' cattle and vegetation. *Id.* at 704. Similarly, in *West Pratt Coal*, the defendant legally mined under plaintiff's land several years prior to the lawsuit. 49 So. at 850. Plaintiff's claim did not accrue, however, until it suffered an injury when its top soil settled and cracked. *Id.* at 851.

BRIC sustained an injury when its sewer system was filled with cement and grout without its permission and, in BRIC's words, was "destroyed." BRIC's injury was not the realization of its destroyed sewer system – it was the destruction itself. Its ignorance of this destruction does not toll the statute of limitations. *See Home Ins. Co.*, 285 So. 2d at 473. BRIC's cause of action therefore accrued on June 1, 2001, and the statute of limitations has long since run on either a trespass or a trespass on the case claim. Accordingly, the decision of the district court is

10

**AFFIRMED.**

11