854 So.2d 573 (2001)
MATTHEWS BROTHERS CONSTRUCTION COMPANY, INC.
v.
STONEBROOK DEVELOPMENT, L.L.C., et al.
2991175.
Court of Civil Appeals of Alabama.
December 21, 2001.
*575 Jacqueline E. Austin, Wetumpka, for appellant.
Thomas R. Edwards and Clyde T. Bailey III of Edwards & Edwards, P.C., Wetumpka, for appellees.
PER CURIAM.
Matthews Brothers Construction Company, Inc., filed an action seeking damages from Stonebrook Development, L.L.C., alleging open account, account stated, and work and labor done. Stonebrook answered and denied liability. Stonebrook also filed a counterclaim, alleging counts of breach of contract and breach of warranty. Matthews Brothers later moved to add Bill N. Sanford and Sanford, Bell, & Associates, Inc. (hereinafter "the Sanford defendants"), as third-party defendants; the trial court granted that motion.
The Sanford defendants moved to dismiss Matthews Brothers' claims against them. The trial court granted that motion and entered an order dismissing the Sanford defendants. Stonebrook moved for a partial summary judgment on its counterclaim alleging breach of contract. The trial court also granted that motion, entered a partial summary judgment in favor of Stonebrook, and awarded Stonebrook damages of $155,966.73. The remaining claims were then tried before the trial court.
After receiving evidence ore tenus, the trial court entered a judgment finding in favor of Stonebrook on Matthews Brothers' claims. In that judgment, the trial court also found in favor of Stonebrook on its remaining counterclaim of breach of warranty against Matthews Brothers, and it awarded Stonebrook $27,604.50 as damages. Matthews Brothers appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
The record indicates Stonebrook is a corporation that was formed by Bill Sanford for the purpose of establishing a new residential neighborhood. The Sanford defendants prepared a set of blueprints or plans for the construction of the project. Matthews Brothers used those plans to prepare its bid for the construction of roadways and other improvements for Stonebrook's new residential-neighborhood project. Stonebrook awarded Matthews Brothers the contract and the two parties signed a contract dated June 1, 1994. The contract provided that Matthews Brothers' performance be completed by August 11, 1994. The contract also contained a liquidated-damages provision requiring Matthews Brothers to pay one-half of 1% of the contract price for each day, if any, that its part of the construction project was delayed past August 11, 1994.
Matthews Brothers' performance of its part of the construction of Stonebrook's residential neighborhood was delayed. Matthews Brothers completed its performance of the contract sometime in December 1994 and Stonebrook paid Matthews Brothers the contract amount in January 1995. In November 1995, Matthews *576 Brothers performed additional work at the Stonebrook residential neighborhood in order to repair some portions of the roads it had constructed. Stonebrook argued that that work was "warranty work" related to the original contract. Matthews Brothers considered the additional work necessary because of faulty road design by the Sanford defendants and other factors, and maintained that it was due an additional $42,049.96 for the additional work.

I. The Trial Court's Dismissal of Matthews Brothers' Third-Party Claims against the Sanford Defendants

On appeal, Matthews Brothers first argues that the trial court erred in dismissing its third-party claims against the Sanford defendants. Matthews Brothers alleged that the Sanford defendants were negligent and/or failed to meet professional standards in drafting the plans and specifications for the Stonebrook real estate project. Matthews Brothers sought a judgment against the Sanford defendants reimbursing it "for all sums that may be adjudged against [Matthews Brothers]" under Stonebrook's contract and warranty claims.
The Sanford defendants filed a motion pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss Matthews Brothers' claims against them. In that motion, the Sanford defendants argued that Matthews Brothers' claims were barred by the applicable statute of limitations. The Sanford defendants also alleged that Matthews Brothers' claims sought contribution for a joint tortfeasor, which is, generally, impermissible in Alabama. See Crigler v. Salac, 438 So.2d 1375 (Ala.1983).
Although the trial court did not state the basis for its summary judgment in favor of the Sanford defendants, that judgment cannot be sustained on either of the foregoing grounds and, therefore, must be reversed.
We turn first to the issue of the statute of limitations. The Sanford defendants submitted evidence in support of their "motion to dismiss,"[1] including the deposition testimony of the principal of Matthews Brothers, Jimmy Matthews. Matthews testified that almost immediately after his company began its performance under its June 1, 1994, contract, it experienced problems with the subdivision design plans as they related to the subdivision's soil type and the company's ability to properly construct the roadways. Matthews testified that a large part of the construction problems and the delay were caused by what he characterized as a faulty design of the roadways, given the condition of the soil in the construction area. Matthews testified that the condition of the soil made it difficult to lay a stable roadway because the soil tended to shift under the asphalt; he also testified that Stonebrook refused to pay for additional materials to place on the roadways to facilitate stabilizing the soil in order to provide a good base for the roads. Matthews *577 Brothers continued to experience such difficulties after the expiration of the August 11, 1994, date on which the contract specified its performance was to be completed. Bill N. Sanford sent a letter dated November 30, 1994, to Jimmy Matthews, expressing concern about the delays and the quality of Matthews Brothers' work. Jimmy Matthews testified that he "knew we had problems" in November 1994.
The Sanford defendants argue that any claim Matthews Brothers had against the Sanford defendants arose, at the latest, in December 1994. At that time, according to the Sanford defendants, Matthews Brothers had completed its work, but had done so beyond the original completion date contemplated by the parties to the construction contract and therefore faced the prospect of paying damages pursuant to a liquidated-damages provision of its contract with Stonebrook. Accordingly, argues the Sanford defendants, it was at that point that Matthews Brothers' cause of action for negligence against the Sanford defendants accrued. Because Matthews Brothers filed its third-party complaint on June 3, 1998, the Sanford defendants argue that it was filed beyond the applicable two-year statute of limitations. See Ala.Code 1975, § 6-5-221.[2]
Matthews Brothers counters by contending, among other things, that its cause of action against the Sanford defendants was not barred by the applicable statute of limitations because, it says, the action did not accrue until a judgment in favor of Stonebrook was entered against it. It was not until that point, argues Matthews Brothers, that it suffered actual damage. We agree.
Matthews Brothers' claim against the Sanford defendants is one for negligence. Unlike a contract action, in which the cause of action accrues at the time of breach even if no actual damage is sustained, Bass Pecan Co. v. Berga, 694 So.2d 1311 (Ala.1997), a cause of action in tort accrues only when actual damage or injury is sustained. Citing Alabama's statute of limitations as to non-contract causes of action, the Court in Payne v. Alabama Cemetery Association, Inc., 413 So.2d 1067 (Ala.1982), analyzed Alabama caselaw relating to the accrual of a cause of action as follows:
"The statute ... will not begin to run until some injury occurs which gives rise to a maintainable cause of action. Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925); West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909). As pointed out in Garrett v. Raytheon Co., the basic principles set forth by Corona Coal and West Pratt Coal on one hand, and Garrett v. Raytheon Co. on the other, are the same. In actions such as the case at bar, the act complained of does not itself inflict a legal injury at the time it is done, but *578 plaintiff's injury only follows as a result and a subsequent development of the defendant's act. `In such cases, the cause of action "accrues," and the statute of limitations begins to run, "when and only when, the damages are sustained."` Garrett v. Raytheon Co., 368 So.2d at 519. See also, Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917)."
413 So.2d at 1072 (emphasis added). Accord Smith v. Medtronic, Inc., 607 So.2d 156, 159 (Ala.1992) ("A party has a cause of action, and the statute of limitations begins to run, on the date the first legal injury occurs, but not necessarily from the date of the act causing the injury.").
The general principle at issue was well stated by Dean Prosser in explaining that the fourth element of a cause of action for negligence, "actual loss or damage," requires more than nominal damages. "[P]roof of damage [is] an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough." William C. Prosser, Handbook of the Law of Torts, § 30 (4th ed.1971) (emphasis added).
Applying this general principle, our courts have long recognized that non-contract causes of action accrue only when the plaintiff actually suffers injury or loss. Thus, in Alabama Power Co. v. Cummings, 466 So.2d 99, 102 (Ala.1985), our Supreme Court held that a homeowner's cause of action accrued only when the defects (cracks and other injuries) in her home actually manifested themselves, not when the defendant's complained-of-acts occurred decades earlier. "Generally, a cause of action for injury or damage to property accrues, so as to start the running of limitations, on the date of the injury or damage, and not upon the occurrence of the negligence itself, or the last known negligent act." 54 C.J.S. Limitations of Actions § 176 (1987) (citing Cummings, 466 So.2d at 102; Rumford v. Valley Pest Control, Inc., 629 So.2d 623, 627 (Ala.1993); and Dorsey v. Bowers, 709 So.2d 51, 56 (Ala.Civ.App.1998)).
In West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909), the defendant's mining operations removed the subjacent support from the plaintiff's land. Since a landowner has a legal right to subjacent support, the court could have held that a "legal injury" first occurred when the mining operations commenced. Instead, the Court deemed the cause of action to have accrued only when the soil on the plaintiff's property settled and the enjoyment of the plaintiff's land was actually lost. Id. at 393, 49 So. at 851.
The Sanford defendants rely on the fact that, if any negligence on their part caused Matthews Brothers' late performance of its construction work, that late performance was nonetheless completed in December 1994. In essence, the Sanford defendants contend that, because Matthews Brothers at that time faced the possibility of paying damages pursuant to the liquidated-damages provision of its contract with Stonebrook, its cause of action alleging negligence against the Sanford defendants accrued at that time. We disagree. Although Stonebrook might have suffered actual injury or loss at that point because of the delay in the completion of its roadways, Matthews Brothers had not yet suffered any injury or loss. Facing the possibility of paying monetary damages to another party, and actually paying such damages, are not the same. The possibility, or even the probability, of an action by Stonebrook to enforce its liquidated-damages provision, in the words of Prosser, was at that point a "threat of *579 future harm, not yet realized, [and] is not enough."[3]
It is not uncommon for contractual liquidated-damages rights, like other contractual rights, to go unenforced.[4] The rule of accrual urged by the Sanford defendants, however, would require a contractor to sue the project architect or engineer in the midst of an ongoing construction project whenever the contractor missed a deadline as a result of acts or omissions of the architect or engineer. The contractor would be forced to do so, even though it would not yet be known whether the owner will ever pursue a claim for damages for the contractor's late performance (much less prevail on such a claim). Even in situations where the contractor has been informally assured that liquidated damages will not be pursued, the contractor would still be forced to generate potentially unnecessary litigation against others involved in the project simply to protect itself.
Although the issue before us does not appear to have been previously addressed by our courts, it has been addressed by courts in other states. In Bellevue South Associates v. HRH Construction Corp., 78 N.Y.2d 282, 579 N.E.2d 195, 574 N.Y.S.2d 165 (1991), a subcontractor pursued a claim against a supplier of defective tile on a theory of implied warranty of merchantability. The court held that the subcontractor's claim against its supplier did not accrue until payment by the subcontractor of damages to the owner/developer. 78 N.Y.2d at 298, 579 N.E.2d at 203, 574 N.Y.S.2d at 173 (n. 4 and accompanying text).
The court in Bellevue South relied on an earlier New York Court of Appeals decision, McDermott v. City of New York, 50 N.Y.2d 211, 406 N.E.2d 460, 428 N.Y.S.2d 643 (1980). In McDermott, a sanitation worker sued the City of New York for injuries resulting from a defect in the hopper mechanism of a sanitation truck. The city, in turn, brought a third-party action against the truck's manufacturer seeking indemnification. The trial court dismissed the third-party action as untimely. The New York Court of Appeals reversed, explaining that indemnification claims
"generally do not accrue for the purpose of the Statute of Limitations until the party seeking indemnification has made payment to the injured person. This principle stems from the nature of indemnification claims and does not vary *580 according to the breach of duty for which indemnification is sought."
50 N.Y.2d at 216, 406 N.E.2d at 461, 428 N.Y.S.2d at 645. "[S]ince the cause of action is not complete until loss is suffered, familiar Statute of Limitations principles dictate that accrual occurs upon payment by the party seeking indemnity." 50 N.Y.2d at 217, 406 N.E.2d at 462, 428 N.Y.S.2d at 646.[5]
In Kala Investments, Inc. v. Sklar, 538 So.2d 909 (Fla.Dist.Ct.App.1989), an apartment owner brought an action against its architect, contractor, and others, seeking to recover an amount paid in settlement with tenants who were injured by a window defect. The Florida court explained that "the statute of limitations period does not begin to run on a claim for indemnity or contribution until the right to bring that claim is establishedeither when a judgment has been entered, or when the defendant has paid the claim." 538 So.2d at 915-16.
Similarly, in Hillcrest Country Club v. N.D. Judds Co., 236 Neb. 233, 461 N.W.2d 55 (1990), a country club brought a suit against its contractor for partial failure of its clubhouse roof. The contractor, in turn, sued the supplier of the roof. In concluding that the contractor's claim against its supplier was not time-barred, the Nebraska Supreme Court stated: "The rationale behind this is simple: A party seeking indemnification has no injury to complain of until he or she suffers a loss. If the period of limitations were to start running when the underlying warranty is breached, a party could be foreclosed from indemnity through no fault of his or her own." 236 Neb. at 247, 461 N.W.2d at 64.
The reasoning of these cases is persuasive. In the words of the New York court, it is reasoning based on "familiar Statute of Limitations principles." Moreover, it is consistent with the language of Ala.Code 1975, § 6-5-221, which provides that a cause of action accrues "when a person is injured." Accord, Smith v. Pitts, 167 Ala. 461, 52 So. 402 (1910) (a surety's cause of action against a principal does not accrue until the surety has paid the debt of the principal). Accordingly, Matthews Brothers' third-party claim against the Sanford defendants was not time-barred.
Nor was Matthews Brothers' thirdparty claim against the Sanford defendants barred as an effort to seek contribution from a joint tortfeasor. See generally, e.g., Humana Med. Corp. v. Bagby Elevator Corp., 653 So.2d 972 (Ala.1995). Matthews Brothers was not sued as a tortfeasor. Its liability, if any, to Stonebrook arises from its breach of its contractual obligation to timely perform the construction at issue. Accordingly, Alabama's rule barring contribution among joint tortfeasors is not at issue.
Because neither the applicable statute of limitations nor the Alabama rule barring contribution among joint tortfeasors prevents *581 Matthews Brothers from maintaining its third-party claim against the Sanford defendants, we conclude that the trial court erred in granting the Sanford defendants' motion to dismiss that claim. We therefore must reverse the trial court's judgment in this regard.

II. The Trial Court's Entry of Summary Judgment in Favor of Stonebrook on its Breach-of-Contract Claim for Liquidated Damages
Matthews Brothers next argues that the trial court erred in entering a summary judgment in favor of Stonebrook on Stonebrook's claim alleging breach of contract and seeking liquidated damages. In its motion for a partial summary judgment, Stonebrook argued that it was entitled to liquidated damages under the parties' contract because Matthews Brothers did not complete the work in the time specified in the contract. Matthews Brothers argues that Stonebrook caused its failure to perform, and therefore that it should not be allowed to take advantage of the failure. See Dixson v. C. & G. Excavating, Inc., 364 So.2d 1160 (Ala.1978).
In opposition to Stonebrook's motion for a summary judgment, Matthews Brothers presented evidence tending to indicate that portions of the delay in its performance were attributable to Stonebrook's own conduct. Much of that evidence has been set forth in this court's discussion of the summary judgment in favor of the Sanford defendants, infra. In addition, Matthews Brothers presented evidence that Sanford marked "clearing limits," then later decided to attempt to preserve some trees in the marked area and re-marked the area, thus causing a delay in Matthews Brothers' ability to perform the contract. Matthews Brothers also presented evidence that Stonebrook failed to perform some needed testing of the soil, and that it learned, once the project was underway, that the soil would not dry properly. Matthews testified that mixing lime into the soil would alleviate that problem; however, Stonebrook refused to pay for lime to mix in the soil. Matthews testified that had lime been mixed into the soil, the project could have been completed in a timely manner.
Matthews Brothers' evidence, if believed, could establish that all, or a portion, of the delay on the project was not attributable to Matthews Brothers, but to Stonebrook. The liquidated-damages provision allows for an extension of time in the event of "Acts of God ... or other delays caused by the Owner or other parties." The issue of whether Stonebrook's actions actually caused the delay for which it sought liquidated damages is a factual issue that should be determined by the fact-finder. See Ray Sumlin Constr. Co. v. City of Mobile, 519 So.2d 511 (Ala.1988). We conclude that Matthews Brothers presented substantial evidence in opposition to Stonebrook's summary-judgment motion on the issue of liquidated damages. See West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). For that reason, we must reverse the summary judgment in favor of Stonebrook on that issue.

III. The Trial Court's Judgment in Favor of Stonebrook on its Breach-of-Warranty Claim and Against Matthews Brothers on its Claim for Payment for its Supplemental Work
The trial court denied any compensation to Matthews Brothers for its supplemental work and awarded Stonebrook the full amount of its warranty claim against Matthews Brothers. Logically, such a determination is not supportable unless Stonebrook proved (a) that Matthews Brothers failed to comply with *582 contract specifications and (b) that any such failure proximately caused all of the roadway failures for which Stonebrook was awarded damages.
Matthews Brothers warranted its work to be "free from defects in workmanship or materials for a period of one year." This was not a guarantee that the job results would be perfect. Instead, it was a guarantee that its work would be done in a workmanlike manner in accordance with the contract specifications.[6]
Stonebrook relies primarily on two passages of testimony in an effort to establish that Matthews Brothers' work did not satisfy its warranty. First, Stonebrook relies heavily on testimony by Sanford that Matthews Brothers did not have enough people on the job site on certain days when the weather was good, and therefore failed to make adequate progress toward timely completion of the job. The trial testimony, however, did not support the conclusion that that omission caused the work eventually performed by Matthews Brothers to not comply with contract specifications.
Stonebrook also points to a passage from the testimony of a second contractor, Wadsworth, who was hired by Stonebrook after Matthews Brothers had completed its work. Specifically, Stonebrook relies on an affirmative answer by Wadsworth when asked if he had been able to correct the defective roads and whether he had been called back to perform any corrective work. Stonebrook argues that because Wadsworth was not called back to the job site, the trial court could infer that no subsequent failures occurred. Ergo, reasons Stonebrook, Wadsworth's performance demonstrates that the job could have been performed properly in the first instance and, therefore, by comparison, Matthews Brothers' workmanship must have been inferior.
We note, however, that later in his deposition, Wadsworth was asked directly whether there subsequently have been any failures in the locations in which he performed work. His response was, "I have heard that there have but I haven't been up there." Thus, it cannot fairly be inferred that, merely because Wadsworth said earlier in his deposition that he had not been called back to the job site, he was intending to suggest that the roadway had not experienced any subsequent failures. To the contrary, the uncontroverted testimony at trial was that the roads in question never have been "right" and were to some degree still failing at the time of trial.
Stonebrook also bore the burden of proof as to the cause of the roadway failures. If the failures were a result of design defects, given the soil, rain and groundwater conditions at the job site, then Matthews Brothers is not responsible for them under its warranty and would be entitled to compensation for its supplemental work in 1995.
The great weight of the evidence supports the conclusion that some, if not all, of the failures in the roadway were a result of design defects, in the context of the underlying *583 "gumbo"-type soil, the "plasticity" of which was greatly exacerbated by unusually wet conditions, including rain and water seeping out of the hills above the site. Witness after witness provided testimony to this effect.[7]
In contrast, there is no direct testimony that any deficiency in Matthews Brothers' work caused any of the roadway failures. The only direct causation testimony at trial came from Wadsworth, who attributed the failures to the water coming out of the hill adjacent to the roadway. He testified that he was only able to make the repairs that he accomplished after he installed a French drain to catch the water and prevent it from invading the roadbed. The French drain to which he refers was not part of the design provided to Matthews Brothers by the Sanford defendants when Matthews Brothers performed either its original or its supplemental work on the job site. There was uncontroverted evidence that even with the significant design improvements achieved with this drain, water has continued to invade the roadbed to some degree and to percolate up through the pavement.
After carefully reviewing all of the evidence of record, including but not limited to that described above, it is our conclusion that by far the great weight of the evidence is to the effect that design defects, in conjunction with the naturally occurring conditions, caused many, if not all, of the failures in the roadway. Conversely, our review of the record leads us to the conclusion that the record does not contain substantial evidence that deficiencies, if any, in the work performed by Matthews Brothers caused all of such failures. In finding as it did in favor of Stonebrook and against Matthews Brothers at trial, the trial court necessarily found that all of the defects that manifested themselves in the roadway following Matthews Brothers' work resulted from deficiencies in Matthews Brothers' workmanship. That conclusion is not supported by substantial evidence. We therefore must reverse the trial court's judgment in favor of Stonebrook as to Stonebrook's warranty claim against Matthews Brothers and as to Matthews Brothers' claims for the supplemental work that it performed in 1995.
In light of the foregoing, the judgment of the trial court is reversed, and the cause is remanded for a new trial.
REVERSED AND REMANDED WITH INSTRUCTIONS.
*584 CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.
YATES, P.J., and THOMPSON, J., concur in part and dissent in part.
THOMPSON, Judge, concurring in part and dissenting in part.
I concur with that part of the main opinion that reverses the summary judgment on Stonebrook's claim for liquidated damages. However, I must dissent from the other portions of the main opinion.
I conclude that the trial court properly entered the summary judgment in favor of the Sanford defendants, because Matthews Brothers' claims were filed outside the period allowed by the statute of limitations. I also find the main opinion's reliance upon cases concerning the accrual of a cause of action in cases involving indemnification to be misplaced. Therefore, I would affirm the trial court's summary judgment in favor of the Sanford defendants.
I also disagree with this court's reversal of the trial court's judgment on Stonebrook's warranty claim against Matthews Brothers. The trial court conducted a hearing and received ore tenus evidence on the breach-of-warranty claim. The parties each presented evidence that would tend to support a judgment on their respective positions with regard to this issue. Where the trial court's judgment is based on ore tenus evidence, that judgment is entitled to a presumption of correctness and will not be reversed on appeal absent a showing that it is plainly and palpably wrong. Myrick v. Gladish, 690 So.2d 435 (Ala.Civ.App.1997). The evidence regarding whether the needed road repairs should be considered work required of Matthews Brothers under the warranty provision in the parties' contract was a question of fact. The presumption of correctness afforded the trial court on factual questions where it has heard ore tenus evidence is based on the trial court's unique advantage of being able to personally observe the witnesses and assess their credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). I believe that the main opinion impermissibly substitutes its own judgment for that of the trial court. James v. Thaggard, 795 So.2d 738, 741(Ala.Civ.App.2001) ("An appellate court my not substitute its own judgment for that of the trial court if the trial court's judgment is supported by reasonable inferences that may be drawn from the evidence."). Given the presumption of correctness in favor of the trial court's judgment and given the evidence in the record on appeal, I cannot say that the trial court's holding on this issue was plainly and palpably wrong. See Myrick v. Gladish, supra. See also Ex parte Pielach, 681 So.2d 154 (Ala.1996). Therefore, I would affirm that portion of the trial court's judgment determining that Matthews Brothers had breached a warranty.
YATES, P.J., concurs.
NOTES
[1] In support of their motion to dismiss, the Sanford defendants submitted a portion of the deposition of Jimmy Matthews and various documents. Where a trial court considers matters outside the pleadings submitted in support of or in opposition to a motion to dismiss made pursuant to Rule 12(b)(6), the motion to dismiss is converted into a motion for a summary judgment. Rule 12(b), Ala. R. Civ. P.; Gates Rubber Co. v. Cantrell, 678 So.2d 754 (Ala.1996); Graveman v. Wind Drift Owners' Ass'n, Inc., 607 So.2d 199 (Ala. 1992). Therefore this court must review the trial court's judgment on this issue as a summary judgment, rather than as a dismissal. See Stubbs v. Brookwood Medical Center, 767 So.2d 359 (Ala.Civ.App.2000). However, if, notwithstanding the treatment of a motion to dismiss as a summary-judgment motion, a movant is not entitled to summary judgment "as a matter of law," such motion must be denied. See Ala. R. Civ. P. 56(c)(3).
[2] In 1994, the Alabama legislature enacted a statute-of-limitations provision especially applicable to all civil actions against architects and engineers performing or furnishing the design, planning, specifications, testing, supervision, administration, or observation of any construction of any improvement on or to real property. See Ala.Code 1975, § 6-5-221. Like the statute that was previously applicable to causes of action against architects and engineers, § 6-2-38, Ala.Code 1975, this new provision contains a two-year time limit for the filing of claims. This new provision was made applicable to causes of action accruing after February 25, 1994. Ala.Code 1975, § 6-5-223. The operative principles for accrual of causes of action are the same under § 6-5-221 as under § 6-2-38 and its predecessor statutes; the Alabama cases discussed herein were decided under § 6-2-38 and its predecessors.
[3] If Matthews Brothers had attempted to sue the Sanford defendants on the first day after they were late in performing their contractual obligations to Stonebrook, but before it had been sued by Stonebrook and suffered a judgment and loss under the liquidated-damages clause, such a suit would have been subject to dismissal under Rule 12(b)(6), Ala. R. Civ. P., for failure to state a claim, because Matthews Brothers had not yet suffered any actual injury or loss. Indeed, Rule 14, Ala. R. Civ. P., and its statutory predecessor, Title 7, § 259, Ala.Code 1940 (Recompiled 1958), were adopted to prevent third-party claims, which are contingent on the outcome of original actions against third-party plaintiffs, from being dismissed as premature when brought in the same proceeding as the original action. See note 4 infra.
[4] In this case, Matthews Brothers was paid the full amount of its contract, including the 10 percent retainage, in connection with its original work in December 1994. This gave Matthews Brothers a reasonable expectation that there would be no claim for liquidated damages. Furthermore, Matthews Brothers appeared to have had a reasonable belief that all or part of its delay in performing the contract was a result of the Sanford defendants' negligence. To the extent that were true, under the liquidated-damages clause of its contract with Stonebrook, Matthews Brothers would not be liable for the delay in the completion of the construction.
[5] In a footnote, the New York court goes on to explain:

"Indeed, at one time it was thought that the cause of action for indemnity could not be brought by impleader in the main action, since the indemnity claim was premature."
Id. at n. 3 (emphasis added). The same was true in Alabama until the enactment in 1965 of Title 7, § 259, Ala.Code 1940 (Recompiled 1958), and its successor, Rule 14 of the Alabama Rules of Civil Procedure. As the committee comment to Rule 14 notes, impleader allows a defendant to bring in a new party who "may be liable to him for all or part of the plaintiff's claim against him," thereby avoiding multiple suits and the "handicap to the defendant of a time difference between the judgment against him and the judgment in his favor against the party liable over to him." Rule 14, Ala. R. Civ. P., committee comments on 1973 adoption.
[6] Stonebrook argues that "one's undertaking will bind him to whatever it is within the scope of private exertion to accomplish without violating the law, however inconvenient, however many obstacles he may encounter, and however impossible its doing may be to him." Again, however, Matthews Brothers undertook only to comply with the contract specifications, not to ensure that the roadway would perform as needed by the owner. The contract between Matthews Brothers and Stonebrook provides, in part, that "[t]he Contractor hereby agrees to construct Stonebrook Phase I according to plans dated May 27, 1994, and scope of work indicated on said plans and/or this agreement or proposal forms, as prepared by Sanford-Bell & Associates, Inc."
[7] One witness compared the soil to "modeling clay." The county engineer, Steve Martin, testified that "when gumbo gets wet it gets real spongy. It is hard to make it sit down and be a firm foundation." Martin explained that he had tried to stop the paving at one point, but that Sanford had pressed forward in order to meet a deadline for an "open house." Martin further testified that the Sanford defendants had specified the wrong kind of base in their design for the road and that the original design of the road would not have worked with the "gumbo"-type soil. He also described the differences between the design plans for the road and the requirements set forth in county regulations.

According to Matthews's testimony, the soil was "material that you can't dry ... out and you can't compact." Matthews also testified that he normally includes two to three days of compaction work on the subgrade in his bids, but that, on this job, he spent six weeks to two months attempting to process the subgrade, yet did not attempt to charge more than was agreed to in the contract price.
Royce Baker, the subcontractor who laid drainage lines at the development, explained that if gumbo is wet, you can dry it out "unless you have something feeding water to it. This job had some water coming out of the hill that kept this gumbo [wet]." Referencing other sites with this type of soil, Baker explained that in some cases roads have been built which have held up, but that "in some cases they still have a problem. All cases don't work."