Stonebrook Development, L.L.C., Bill N. Sanford, and Sanford, Bell Associates, Inc. ("SBA"), petitioned this Court for a writ of certiorari to review the Court of Civil Appeals' decision in this case. They allege that the Court of Civil Appeals' decision, which reversed the trial court's judgment in a breach-of-warranty and negligence action brought by Matthews Brothers Construction, conflicted with prior decisions of this Court and of the Court of Civil Appeals. We granted the petition, and we affirm the Court of Civil Appeals' judgment.
 Facts and Procedural History
The pertinent facts are set forth in the Court of Civil Appeals' opinion:
 "The record indicates Stonebrook is a corporation that was formed by [Sanford] for the purpose of establishing a new residential neighborhood. [Sanford and SBA] prepared a set of blueprints or plans for the construction of the project. Matthews Brothers used those plans to prepare its bid for the construction of roadways and other improvements for Stonebrook's new residential-neighborhood project. Stonebrook awarded Matthews Brothers the contract and the two parties signed a contract dated June 1, 1994. The contract provided that Matthews Brothers' performance be completed by August 11, 1994. The contract also contained a liquidated-damages provision requiring Matthews Brothers to pay one-half of 1% of the contract price for each day, if any, that its part of the construction project was delayed past August 11, 1994.
 "Matthews Brothers' performance of its part of the construction of Stonebrook's residential neighborhood was delayed. Matthews Brothers completed its performance of the contract sometime in December 1994 and Stonebrook paid Matthews Brothers the contract amount in January 1995. In November 1995, Matthews Brothers performed additional work at the Stonebrook residential neighborhood in order to repair some portions of the roads it had constructed. Stonebrook argued that that work was `warranty work' related to the original contract. Matthews Brothers considered the additional work necessary because of faulty road design by [Sanford and SBA] and other factors, and maintained that it was due an additional $42,049.96 for the additional work."
Matthews Bros. Constr. Co. v. Stonebrook Dev., L.L.C., 854 So.2d 573,575-76 (Ala.Civ.App. 2001). The Court of Civil Appeals summarized the trial court proceedings as follows:
 "[Matthews Brothers] filed an action seeking damages from [Stonebrook], alleging open account, account stated, and work and labor done. Stonebrook answered and denied liability. Stonebrook also filed a counterclaim, alleging counts of breach of contract and breach of warranty. Matthews Brothers [claiming negligent design of the roadway specifications and seeking indemnification] later moved to add [both Sanford and SBA] as third-party defendants; the trial court granted that motion.
 "[Sanford and SBA] moved to dismiss Matthews Brothers' claims against them. The trial court granted that motion and entered an order dismissing [Sanford and SBA]. Stonebrook moved for a partial summary judgment on its counterclaim alleging breach of contract. The trial court also granted that motion, entered a partial summary judgment in *Page 587 
favor of Stonebrook, and awarded Stonebrook damages of $155,966.73. The remaining claims were then tried before the trial court.
 "After receiving evidence ore tenus, the trial court entered a judgment finding in favor of Stonebrook on Matthews Brothers' claims. In that judgment, the trial court also found in favor of Stonebrook on its remaining counterclaim of breach of warranty against Matthews Brothers, and it awarded Stonebrook $27,604.50 as damages. Matthews Brothers appealed to the Supreme Court of Alabama, which transferred the appeal to [the Court of Civil Appeals], pursuant to § 12-2-7(6), Ala. Code 1975."
Matthews Bros. Constr. Co., 854 So.2d at 575.
On December 21, 2001, the Court of Civil Appeals, in a per curiam opinion, reversed the dismissal of Matthews Brothers' indemnity claim against Sanford and SBA, the partial summary judgment in favor of Stonebrook on its breach-of-contract (liquidated-damages) claim, and the trial court's judgment in favor of Stonebrook on its breach-of-warranty claim. Stonebrook did not seek certiorari review of the Court of Civil Appeals' holding as to the breach-of-contract claim.
 Analysis I. Matthews Brothers' Third-Party Indemnity Claim
Sanford and SBA allege that the Court of Civil Appeals wrongly reversed the trial court's dismissal of Matthews Brothers' third-party indemnity claim against them. Specifically, Sanford and SBA contend that the Court of Civil Appeals erred in finding that the statute of limitations for actions against professional architects, contained in Ala. Code 1975, § 6-5-221, did not bar Matthews Brothers' third-party indemnity claim against Sanford and SBA. Sanford and SBA contend that this is a matter of first impression before this Court. The Court of Civil Appeals, in an extensive, scholarly analysis of when Matthews Brothers' indemnification claim accrued, stated:
 "On appeal, Matthews Brothers first argues that the trial court erred in dismissing its third-party claims against [Sanford and SBA]. Matthews Brothers alleged that [Sanford and SBA] were negligent and/or failed to meet professional standards in drafting the plans and specifications for the Stonebrook real estate project. Matthews Brothers sought a judgment against [Sanford and SBA] reimbursing it `for all sums that may be adjudged against [Matthews Brothers]' under Stonebrook's contract and warranty claims.
 "[Sanford and SBA] filed a motion pursuant to Rule 12(b)(6), Ala.R.Civ.P., to dismiss Matthews Brothers' claims against them. In that motion, [Sanford and SBA] argued that Matthews Brothers' claims were barred by the applicable statute of limitations. . . .
 "Although the trial court did not state the basis for its summary judgment in favor of [Sanford and SBA], that judgment cannot be sustained . . . and, therefore, must be reversed.
 "We turn first to the issue of the statute of limitations. [Sanford and SBA] submitted evidence in support of their `motion to dismiss'[1] including the deposition testimony of the principal of Matthews Brothers, Jimmy Matthews. Matthews testified that almost immediately after his company began its performance under its June 1, 1994, contract, it experienced problems with the subdivision design plans as they related to the subdivision's soil type and the company's ability to properly construct the roadways. Matthews testified that *Page 588 
a large part of the construction problems and the delay were caused by what he characterized as a faulty design of the roadways, given the condition of the soil in the construction area. Matthews testified that the condition of the soil made it difficult to lay a stable roadway because the soil tended to shift under the asphalt; he also testified that Stonebrook refused to pay for additional materials to place on the roadways to facilitate stabilizing the soil in order to provide a good base for the roads. Matthews Brothers continued to experience such difficulties after the expiration of the August 11, 1994, date on which the contract specified its performance was to be completed. Bill N. Sanford sent a letter dated November 30, 1994, to Jimmy Matthews, expressing concern about the delays and the quality of Matthews Brothers' work. Jimmy Matthews testified that he `knew we had problems' in November 1994.
 "[Sanford and SBA] argue that any claim Matthews Brothers had against [Sanford and SBA] arose, at the latest, in December 1994. At that time, according to [Sanford and SBA], Matthews Brothers had completed its work, but had done so beyond the original completion date contemplated by the parties to the construction contract and therefore faced the prospect of paying damages pursuant to a liquidated-damages provision of its contract with Stonebrook. Accordingly, argues [Sanford and SBA], it was at that point that Matthews Brothers' cause of action for negligence against [Sanford and SBA] accrued. Because Matthews Brothers filed its third-party complaint on June 3, 1998, [Sanford and SBA] argue that it was filed beyond the applicable two-year statute of limitations. See Ala. Code 1975, § 6-5-221.[2]
 "Matthews Brothers counters by contending, among other things, that its cause of action against [Sanford and SBA] was not barred by the applicable statute of limitations because, it says, the action did not accrue until a judgment in favor of Stonebrook was entered against it. It was not until that point, argues Matthews Brothers, that it suffered actual damage. We agree.
 "Matthews Brothers' claim against [Sanford and SBA] is one for negligence. Unlike a contract action, in which the cause of action accrues at the time of breach even if no actual damage is sustained, Bass Pecan Co. v. Berga, 694 So.2d 1311 (Ala. 1997), a cause of action in tort accrues only when actual damage or injury is sustained. Citing Alabama's statute of limitations as to non-contract causes of action, the Court in Payne v. Alabama Cemetery Association, Inc., 413 So.2d 1067 (Ala. 1982), analyzed Alabama caselaw relating to the accrual of a cause of action as follows:
 "`The statute . . . will not begin to run until some injury occurs which gives rise to a maintainable cause of action. Garrett v. Raytheon Co., 368 So.2d 516
(Ala. 1979); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925); West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909). As pointed out in Garrett v. Raytheon Co., the basic principles set forth by Corona Coal and West Pratt Coal on one hand, and Garrett v. Raytheon Co. on the other, are the same. In actions such as the case at bar, the act complained of does not itself inflict a legal injury at the time it is done, but plaintiff's injury only follows as a result and a subsequent development of the defendant's act. "In such cases, the cause of action `accrues,' and the statute of limitations begins to run, `when and only when, the damages *Page 589 are sustained.'" Garrett v. Raytheon Co., 368 So.2d at 519. See also, Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).'
 "413 So.2d at 1072 (emphasis added). Accord Smith v. Medtronic, Inc., 607 So.2d 156, 159 (Ala. 1992) (`A party has a cause of action, and the statute of limitations begins to run, on the date the first legal injury occurs, but not necessarily from the date of the act causing the injury.').
 "The general principle at issue was well stated by Dean Prosser in explaining that the fourth element of a cause of action for negligence, `actual loss or damage,' requires more than nominal damages. '[P]roof of damage [is] an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough.' William C. Prosser, Handbook of the Law of Torts, § 30 (4th ed. 1971) (emphasis added).
 "Applying this general principle, our courts have long recognized that non-contract causes of action accrue only when the plaintiff actually suffers injury or loss. Thus, in Alabama Power Co. v. Cummings, 466 So.2d 99, 102 (Ala. 1985), our Supreme Court held that a homeowner's cause of action accrued only when the defects (cracks and other injuries) in her home actually manifested themselves, not when the defendant's complained-of-acts occurred decades earlier. `Generally, a cause of action for injury or damage to property accrues, so as to start the running of limitations, on the date of the injury or damage, and not upon the occurrence of the negligence itself, or the last known negligent act.' 54 C.J.S. Limitations of Actions § 176 (1987) (citing Cummings, 466 So.2d at 102; Rumford v. Valley Pest Control, Inc., 629 So.2d 623, 627 (Ala. 1993); and Dorsey v. Bowers, 709 So.2d 51, 56 (Ala.Civ.App. 1998)).
 "In West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909), the defendant's mining operations removed the subjacent support from the plaintiff's land. Since a landowner has a legal right to subjacent support, the court could have held that a `legal injury' first occurred when the mining operations commenced. Instead, the Court deemed the cause of action to have accrued only when the soil on the plaintiff's property settled and the enjoyment of the plaintiff's land was actually lost. Id. at 393, 49 So. at 851.
 "[Sanford and SBA] rely on the fact that, if any negligence on their part caused Matthews Brothers' late performance of its construction work, that late performance was nonetheless completed in December 1994. In essence, [Sanford and SBA] contend that, because Matthews Brothers at that time faced the possibility of paying damages pursuant to the liquidated-damages provision of its contract with Stonebrook, its cause of action alleging negligence against [Sanford and SBA] accrued at that time. We disagree. Although Stonebrook might have suffered actual injury or loss at that point because of the delay in the completion of its roadways, Matthews Brothers had not yet suffered any injury or loss. Facing the possibility of paying monetary damages to another party, and actually paying such damages, are not the same. The possibility, or even the probability, of an action by Stonebrook to enforce its liquidated-damages provision, in the words of Prosser, was at that point a `threat of future harm, not yet realized, [and] is not enough.'[3] *Page 590 
 "It is not uncommon for contractual liquidated-damages rights, like other contractual rights, to go unenforced.[4] The rule of accrual urged by [Sanford and SBA], however, would require a contractor to sue the project architect or engineer in the midst of an ongoing construction project whenever the contractor missed a deadline as a result of acts or omissions of the architect or engineer. The contractor would be forced to do so, even though it would not yet be known whether the owner will ever pursue a claim for damages for the contractor's late performance (much less prevail on such a claim). Even in situations where the contractor has been informally assured that liquidated damages will not be pursued, the contractor would still be forced to generate potentially unnecessary litigation against others involved in the project simply to protect itself.
 "1In support of their motion to dismiss, [Sanford and SBA] submitted a portion of the deposition of Jimmy Matthews and various documents. Where a trial court considers matters outside the pleadings submitted in support of or in opposition to a motion to dismiss made pursuant to Rule 12(b)(6), the motion to dismiss is converted into a motion for a summary judgment. Rule 12(b), Ala.R.Civ.P.; Gates Rubber Co. v. Cantrell, 678 So.2d 754 (Ala. 1996); Graveman v. Wind Drift Owners' Ass'n, Inc., 607 So.2d 199 (Ala. 1992). Therefore this court must review the trial court's judgment on this issue as a summary judgment, rather than as a dismissal. See Stubbs v. Brookwood Medical Center, 767 So.2d 359 (Ala.Civ.App. 2000). However, if, notwithstanding the treatment of a motion to dismiss as a summary-judgment motion, a movant is not entitled to summary judgment `as a matter of law,' such motion must be denied. See
Ala. R.Civ.P. 56(c)(3).
 "2In 1994, the Alabama legislature enacted a statute-of-limitations provision especially applicable to all civil actions against architects and engineers performing or furnishing the design, planning, specifications, testing, supervision, administration, or observation of any construction of any improvement on or to real property. See Ala. Code 1975, § 6-5-221. Like the statute that was previously applicable to causes of action against architects and engineers, § 6-2-38, Ala. Code 1975, this new provision contains a two-year time limit for the filing of claims. This new provision was made applicable to causes of action accruing after February 25, 1994. Ala. Code 1975, § 6-5-223. The operative principles for accrual of causes of action are the same under § 6-5-221 as under § 6-2-38 and its predecessor statutes; the Alabama cases discussed herein were decided under § 6-2-38 and its predecessors.
 "3If Matthews Brothers had attempted to sue [Sanford and SBA] on the first day after they were late in performing their contractual obligations to Stonebrook, but before it had been sued by Stonebrook and suffered a judgment and loss under the liquidated-damages clause, such a suit would have been subject to dismissal under Rule 12(b)(6), Ala. R.Civ.P., for failure to state a claim, because Matthews Brothers had not yet suffered any actual injury or loss. Indeed, Rule 14, Ala.R.Civ.P., and its statutory predecessor, Title 7, § 259, Ala. Code 1940 (Recompiled 1958), were adopted to prevent third-party claims, which are contingent on the outcome of original actions against third-party plaintiffs, from being dismissed as premature when brought in the same *Page 591 
proceeding as the original action. See note 4 infra.
 "4In this case, Matthews Brothers was paid the full amount of its contract, including the 10-percent retainage, in connection with its original work in December 1994. This gave Matthews Brothers a reasonable expectation that there would be no claim for liquidated damages. Furthermore, Matthews Brothers appeared to have had a reasonable belief that all or part of its delay in performing the contract was a result of [Sanford and SBA's] negligence. To the extent that were true, under the liquidated-damages clause of its contract with Stonebrook, Matthews Brothers would not be liable for the delay in the completion of the construction."
Matthews Bros. Constr. Co., 854 So.2d at 576-79.
This Court addressed the issue of when a cause of action for indemnification occurs so as to trigger the running of the statutory limitations period in American Commercial Barge Line Co. v. Roush,793 So.2d 726, 729-30 (Ala. 2000) (noting that in an action seeking indemnification the limitations period does not begin to run until liability has become fixed); see also Alabama Kraft Co. v. SoutheastAlabama Gas Dist., 569 So.2d 697, 700 (Ala. 1990) ("a right to indemnity does not arise . . . until one acting as surety satisfies his principal's obligation, or until a master or principal pays damages arising from his servant's or agent's negligent or fraudulent acts"). See also BellevueSouth Assocs. v. HRH Constr. Corp., 78 N.Y.2d 282, 579 N.E.2d 195,574 N.Y.S.2d 165 (1991); Hillcrest Country Club v. N.D. Judds Co.,236 Neb. 233, 461 N.W.2d 55 (1990); Kala Invs., Inc. v. Sklar,538 So.2d 909 (Fla.Dist.Ct.App. 1989).
The Court of Civil Appeals continued:
 "Because . . . the applicable statute of limitations . . . [does not] prevent Matthews Brothers from maintaining its third-party claim against [Sanford and SBA], we conclude that the trial court erred in granting [Sanford and SBA's] motion to dismiss that claim. We therefore must reverse the trial court's judgment in this regard."
Matthews Bros. Constr. Co., 854 So.2d at 580-81. We agree with the sound reasoning of the Court of Civil Appeals that Matthews Brothers' third-party indemnity claim was not time-barred.[1]
Nevertheless, Sanford and SBA argue that the Court of Civil Appeals should have applied the "occurrence rule" adopted by this Court in Exparte Panell, 756 So.2d 862 (Ala. 1999), and that by not doing so, it has incorrectly decided this issue. We disagree. In Panell, the plaintiff sought damages for legal malpractice; the case has nothing to do with the law of indemnity. On that ground alone, Panell is distinguishable. Moreover, Panell was a plurality opinion; its rationale was *Page 592 
approved by only three of the nine members of this Court.
 II. Stonebrook's Breach-of-Warranty Claim
Stonebrook argues that the Court of Civil Appeals erred in reversing the trial court's judgment in favor of Stonebrook on its breach-of-warranty claim. Specifically, Stonebrook claims that the Court of Civil Appeals failed to follow the ore tenus rule.
Alabama law is well settled, "[w]here evidence is presented to the trial court ore tenus, we presume that the court's conclusions on issues of fact are correct, and we will not disturb them unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." Ex parte Lamar Adver. Co., 849 So.2d 928,929-30 (Ala. 2002); American Petroleum Equip. Constr. Inc. v.Fancher, 708 So.2d 129, 132 (Ala. 1997).
The Court of Civil Appeals' opinion in this case states:
 "Stonebrook relies primarily on two passages of testimony in an effort to establish that Matthews Brothers' work did not satisfy its warranty. First, Stonebrook relies heavily on testimony by Sanford that Matthews Brothers did not have enough people on the job site on certain days when the weather was good, and therefore failed to make adequate progress toward timely completion of the job. The trial testimony, however, did not support the conclusion that that omission caused the work eventually performed by Matthews Brothers to not comply with contract specifications.
 "Stonebrook also points to a passage from the testimony of a second contractor, [Sonny] Wadsworth, who was hired by Stonebrook after Matthews Brothers had completed its work. Specifically, Stonebrook relies on an affirmative answer by Wadsworth when asked if he had been able to correct the defective roads and whether he had been called back to perform any corrective work. Stonebrook argues that because Wadsworth was not called back to the job site, the trial court could infer that no subsequent failures occurred. [Therefore], reasons Stonebrook, Wadsworth's performance demonstrates that the job could have been performed properly in the first instance and, therefore, by comparison, Matthews Brothers' workmanship must have been inferior.
 "We note, however, that later in his deposition, Wadsworth was asked directly whether there subsequently have been any failures in the locations in which he performed work. His response was `I have heard that there have but I haven't been up there.' Thus, it cannot fairly be inferred that, merely because Wadsworth said earlier in his deposition that he had not been called back to the job site, he was intending to suggest that the roadway had not experienced any subsequent failures. To the contrary, the uncontroverted testimony at trial was that the roads in question never have been `right' and were to some degree still failing at the time of trial.
 "Stonebrook also bore the burden of proof as to the cause of the roadway failures. If the failures were a result of design defects, given the soil, rain and groundwater conditions at the job site, then Matthews Brothers is not responsible for them under its warranty and would be entitled to compensation for its supplemental work in 1995.
 "The great weight of the evidence supports the conclusion that some, if not all, of the failures in the roadway were a result of design defects, in the context of *Page 593 
the underlying `gumbo'-type soil, the `plasticity' of which was greatly exacerbated by unusually wet conditions, including rain and water seeping out of the hills above the site. Witness after witness provided testimony to this effect.
 "In contrast, there is no direct testimony that any deficiency in Matthews Brothers' work caused any of the roadway failures. The only direct causation testimony at trial came from Wadsworth, who attributed the failures to the water coming out of the hill adjacent to the roadway. He testified that he was only able to make the repairs that he accomplished after he installed a French drain to catch the water and prevent it from invading the roadbed. The French drain to which he refers was not part of the design provided to Matthews Brothers by [Sanford and SBA] when Matthews Brothers performed either its original or its supplemental work on the job site. There was uncontroverted evidence that even with the significant design improvements achieved with this drain, water has continued to invade the roadbed to some degree and to percolate up through the pavement.
 "After carefully reviewing all of the evidence of record, including but not limited to that described above, it is our conclusion that by far the great weight of the evidence is to the effect that design defects, in conjunction with the naturally occurring conditions, caused many, if not all, of the failures in the roadway. Conversely, our review of the record leads us to the conclusion that the record does not
contain substantial evidence that deficiencies, if any, in the work performed by Matthews Brothers caused all of such failures."
Matthews Bros. Constr. Co., 854 So.2d at 582-83 (footnote omitted; emphasis, other than last two emphases, added).
The Court of Civil Appeals found that the trial court's factual findings were against the great weight of the evidence presented at trial. We agree. The great weight of the evidence at trial demonstrated that the deficiencies in Matthews Brothers' work were the result of defects in the design specifications provided by Sanford and SBA.
Stonebrook also alleges that the Court of Civil Appeals misstated the law governing breach-of-warranty claims. Specifically, Stonebrook claims that "by requiring Stonebrook to prove that all of the damage to the roadway [was] proximately caused by Matthews Brothers' failure to comply with contract specifications without consideration of the manner in which the work was performed, the Court of Civil Appeals is restricting Stonebrook's claim and not allowing Stonebrook to pursue damages, which are the natural and proximate consequence of a breach of warranty." (Petitioner's brief at 21.) As stated above, the Court of Civil Appeals found that "there [was] no direct testimony that any deficiency in Matthews Brothers' work caused any of the roadway failures." MatthewsBros. Constr. Co., 854 So.2d at 583. To the contrary, "the evidence supports the conclusion that some, if not all, of the failures in the roadway were a result of [Sanford and SBA's] design defects." MatthewsBros. Constr. Co., 854 So.2d at 582. Because Stonebrook failed to prove that the warranty was breached, we need not determine whether the Court of Civil Appeals misstated the law regarding causation.
 Conclusion
We affirm the Court of Civil Appeals' judgment that Matthews Brothers' third-party indemnity claim against Sanford and SBA was not time-barred. We also affirm the Court of Civil Appeals' judgment insofar *Page 594 
as it pertains to Stonebrook's breach-of-warranty claim.
AFFIRMED.
Houston, Lyons, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
See, J., concurs in the result.
Moore, C.J., dissents.
[1] Section § 6-5-221(d), Ala. Code 1975, states: "This section shall not apply to . . . any architect, engineer, or builder who, at the time the cause of action accrues or arises, is the owner or is in actual possession or control as owner, tenant, or otherwise of the improvement." Matthews Brothers argues that this section applies because Sanford is the managing partner of Stonebrook and a "principal" in SBA. While this may indicate that Sanford and SBA could have been "in actual possession or control as owner, tenant, or otherwise of [Stonebrook]," the record is unclear as to the extent of the control each had over Stonebrook. Moreover, even if § 6-5-221 does not apply to either party, and the limitations period is instead controlled by Ala. Code 1975, § 6-2-38, "[t]he operative principles for accrual of causes of action are the same under [both statutes]. . . ." Matthews Bros. Constr. Co.,854 So.2d at 577 n. 2.